EULA B. SATTERWAITE ET AL. v. W. H. WILKINSON.

(Filed 28 February, 1917.)

**1. Wills—Interpretation—Intent.**

> The object in construing a will is to give effect to the testator's intent as gathered from the language of the entire instrument, rejecting no words or language if a meaning can be given them, and, if possible, reconciling seeming repugnancies between its different provisions.

**2. Same—Estates—Contingent Limitations—Powers of Disposition—Deeds and Conveyances.**

> A devise to the wife of testator's property, including lands, with power to dispose thereof for her maintenance and for the support of a named son, and for his education, but if his widow die before the son, the latter to be the "entire heir of the remaining property" upon certain conditions, then with contingent limitation over; and if the son live to be 21 years of age, etc., the property "is to be at his own disposal." After the death of the widow and upon the arrival of the son at the age of 21 and the fulfillment of the conditions, it is *Held*, construing the will to effectuate the intention of the testator as gathered from the whole thereof, the son took a defeasible fee, with general power of disposition, and his deed to the land conveyed a good fee-simple title to the purchaser.

CIVIL ACTION, tried before *Whedbee, J.,* at December Term, 1916, of BEAUFORT.

This is an action to recover a tract of land, and both parties claim under the will of Seth H. Tyson, in which the property in controversy was devised as follows:

"It is my will and desire to lend unto my wife, Annie Tyson, during her natural life, all the balance of my estate, both real and personal, of whatever may be found, consisting of hogs, cattle, sheep, horses, poultry, household and kitchen furniture, farming utensils, land, negroes,

cash, notes, accounts, etc., after the payment of all my just and lawful debts. I further leave it my will and desire that my wife, Annie Tyson, shall take care of, raise and educate our son, George T. Tyson, and that she shall be at liberty at any time to sell or dispose of any part or parcels of the remaining property for to live upon herself and enable her to raise and educate our son, George T. Tyson, with land and negroes, except those are not to be sold, but may be rented or hired out if she chooses.

"Should my wife, Annie Tyson, die before her son, George T. Tyson, it is my will and desire that our son, George T. Tyson, should be the entire heir of the remaining property upon the following condition, viz.: Should he die leaving neither wife nor lawful bodily begotten heirs, it is my will and desire that brothers John O. Tyson and Thomas O. Tyson be the final heirs for the remaining property, to be equally divided between them.

"N. B.—Should our son, George T. Tyson, live to be 21 years old and of sound mind, the property is to be at his own disposal; but should he not be of sound mind, leaving neither wife nor lawful bodily begotten heirs, for brothers John O. and Thomas O. Tyson to be the heirs as above described. But should our son, George T. Tyson, at his death (being of any age) leave wife or heirs as above described, they are to be the heirs."

Annie Tyson died leaving surviving, her George T. Tyson, who, after he became 21 years of age, and being of sound mind, conveyed the land in controversy by deed in due form to convey a fee simple, under which the defendant Wilkinson claims.

That the said George T. Tyson died in July, 1916, leaving surviving him his widow and five children, who are the plaintiffs in this action.

His Honor held, upon these facts, and so adjudged, that George T. Tyson had the power under the will of Seth Tyson to convey the land in controversy, and that the defendant was the owner thereof, and the plaintiffs excepted and appealed.

*Daniel & Warren for plaintiffs.*
*Small, MacLean, Bragaw & Rodman for defendant.*

ALLEN, J. The object of construction in passing upon the provisions of a will is to discover and effectuate the intent of the testator.

It is presumed that every part of the will "expresses an intelligent intent, *i. e.,* means something" (*Wooten v. Hobbs,* 170 N. C., 214), and this intent is not only to be "gathered from the language used, if possible" (*Freeman v. Freeman,* 141 N. C., 99), "but in seeking for his intention we must not pass by the language he has used. If we do, we shall make the will and not expound it." *Alexander v. Alexander,* 41 N. C., 231, in *McCallum v. McCallum,* 167 N. C., 311.

It is also a rule of construction that "Every part of a will is to be considered in its construction, and no words ought to be rejected, if any meaning can possibly be put upon them. Every string should give its sound" (*Edens v. Williams,* 7 N. C., 31), or, as expressed by *Gaston, J.,* in *Dalton v. Scales,* 37 N. C., 523, "In the interpretation of wills it is the clear duty of the court to give effect to each and every part of the instrument, and, if it be possible, to reconcile all seeming repugnance between its different provisions. As the instrument is an entire act, intended to operate altogether and at the same moment, it is not to be admitted, unless the conclusion be irresistible that the testator had two inconsistent intents, and has left a declaration of both these inconsistent intents as constituting a law for the disposition of his property"; and also: "When language is used having a clearly defined legal signification, there is no room for construction to ascertain the intent; it must be given its legal meaning and effect." *Campbell v. Cronly,* 150 N. C., 469.

We must then examine the whole will; must reconcile, if possible, apparently conflicting provisions; must assume that all language used means something, and give proper effect to words having a definite legal meaning, in the absence of a contrary intent, clearly expressed.

When these principles are applied to the terms of the will before us, we find that the testator devises the land in controversy to his son, George T. Tyson, in language which the plaintiffs do not contend, standing alone, would not confer a fee-simple estate, and he then provides that if his son is of sound mind when he reaches 21 years of age (and both facts are found to exist), "the property is to be at his own disposal."

The ordinary meaning of "property at his own disposal" is that it is property which he can dispose of; get rid of; part with; relinquish; alienate; effectually transfer (3 Words and Phrases, p. 214), and this is the interpretation put on similar language in *Parks v. Robinson,* 138 N. C., 269, in which it was held that "Where a testator died, leaving a widow and minor children, and by his will gave to his wife 'during her natural life and at her disposal, all the rest, residue, and remainder of his real and personal estate,' that the wife was given an estate for life, with a power to dispose of the property in fee." This authority is approved in *Mabry v. Brown,* 162 N. C., 221; *Griffin v. Commander,* 163 N. C., 232, and in other cases.

We have, then, an express power in the son to dispose of, to convey, without restriction and without qualification that it should not be exercised if he married and had children born to him, and we cannot refuse to give effect to this important provision unless irreconcilable with other parts of the will, and we do not think it is so.

The son was not of age, was unmarried, and had no children, when the will was made, and he and the wife of the testator were the only persons living to whom was due a moral or legal obligation, and they were the principal objects of his bounty.

He gives his wife a life estate in real and personal property, with power to dispose of any of it except land and negroes. He then provides that upon the death of the wife the son shall be the "entire heir," but that if he dies leaving neither wife nor children, the property shall belong to two brothers of the testator, and that if he leaves wife and children they are to be the "heirs"; but he also says: "N. B.—Should our son, George T. Tyson, live to be 21 years old and of sound mind, the property is to be at his own disposal."

If this does not mean the full and unqualified power to convey after he became 21, it means nothing, as he must die leaving wife and children or having none, and in one event the wife and children would say you cannot convey because there is a limitation over to us, and in the other the two brothers would take the same position because of his death without wife or child, and no condition could arise in which he could dispose of the property.

We are therefore of opinion that this provision of the will must stand, and that full effect may be given to all parts of the will by adopting the construction that George T. Tyson took a defeasible fee, with a general power of disposition, and it follows that the defendant acquired title under the conveyance.

Affirmed.