J. F. THOMPSON ET AL. v. L. M. HUMPHREY ET AL.

(Filed 20 December, 1919.)

1. **Wills—Estates—Contingent Remainders.**

Where, by the terms of his will, the testator's intent is shown that the vesting of certain contingent interests shall be at the death of the first taker, it will control the general rule that they will best at the death of the testator.

2. **Same—Vesting of Estates—Deeds and Conveyances—Trusts—Uses.**

A testator devised to his wife during widowhood or until she remarry. the income from certain of his lands, with remainder to his children at her death or remarriage, who should then be twenty-one years of age, or in case of death of such child, his or her child or children surviving to take the part the deceased parent would have taken if living; and should the wife die before any of the testator's children reached the age of twenty-one, the executor shall collect the income and expend it for the testator's children, until they arrive at that age, turning over the shares of the others to them; and divide the whole property when all the children reached their majority, and giving all of them, upon arriving at age, "a voice in the management of the property embraced in the will": *Held,* the contingency upon which the interest of the children would vest would be at the death or remarriage of the wife, and the successive arrival at age of the living children, the title as to each until that time being a

defeasible fee, the grandchildren taking directly under the will, if they fall within its terms, and not by descent. *Hence*, before the death of the mother, holding the life interest, a valid conveyance of the fee-simple title cannot be made. The question of the limitation of fees to take effect alternately, etc., and the effect of the life tenant's deed as an estoppel, discussed by WALKER, J.

**3. Judgments— Estoppel— Scope of Inquiry — Reference — Extraneous Findings—Actions—Quasi in Rem.**

Where, under a will, the children and grandchildren of the testator take a defeasible fee in remainder after the death of the first taker, and after a receiver has been appointed by the court to manage the estate, action has been brought solely for the purpose of returning the residue, not disposed of, to the administrator with the will annexed, and a referee has been appointed for an accounting, his finding, approved by the judge, that the remaindermen acquired such estate in fee, is neither involved within the scope of the inquiry nor the issue, and cannot conclude the parties as to their actual title, especially where the grandchildren have not been made parties or represented by guardian. The principle by which a judgment *quasi in rem* may affect and conclude all persons, whether parties or not, distinguished by WALKER, J.

**4. Same—Fee—Defeasible Fee—Consistent Findings.**

In this case it is *Held*, where the children of the testator took a defeasible fee under his will, the referee's report upon an accounting of a former receiver, that the children took a remainder in fee is not inconsistent with the fact that they took a defeasible and not a fee simple absolute title.

CIVIL ACTION, heard by *Bryson, J.,* upon facts agreed, at September Term, 1919, of GUILFORD.

On 1 August, 1919, plaintiffs contracted to sell the land described in the case, and to convey a good and indefeasible title thereto, for the consideration stated. They tendered a deed for the same, and·defendants refused to accept it upon the ground that plaintiffs could not convey such a title as is described in the contract, as they did not have an indefeasible title to the said land.

The controversy arose upon the following facts agreed:

1. At the time of his death, on 15 April, 1903, B. J. Fisher was the owner of the land above described, together with adjoining land and other real estate in said State ,and county, subject to certain incumbrances, which have since been discharged; and he left a last will and testament, which was afterwards duly probated, a copy of which is hereunto annexed, and asked to be taken as a part of this paragraph.

2. The executor named in the will did not qualify, but Isabella Fisher, widow of B. J. Fisher, qualified as administratrix with the will annexed, and continued to act in that capacity until 1904.

3. Early in the year 1904 a suit was instituted in the Superior Court of Guilford County for the purpose of having a receiver and commis-

sioner appointed to take charge of, manage, and control all the estate of B. J. Fisher, deceased. The entire record of that action is referred to, and made a part of this statement of the case, as fully as if herein set out. The Supreme Court affirmed the judgment of the Superior Court, as will appear by reference to the case, which is reported in 170 N. C., which judgment confirmed the report of the referee.

4. As will appear from the record in *Fisher et al. v. Fisher et al.*, the complaint of Isabella Fisher was filed and a guardian *ad litem* was appointed to represent the infant children, to wit: Olivia Maude Fisher, William R. G. Fisher, Elsie May Fisher, and Millicent Rosa Fisher; and a receiver and commissioner was appointed and acted in that capacity until the June Term, 1906, of the Superior Court, when he resigned and another person was appointed trustee to succeed him. From the year 1904 until the October Term of the court, 1914, all of the property and estate of B. J. Fisher, deceased, including the property in controversy, was held, managed, and controlled by the receiver and trustee under the immediate direction and orders of the court.

5. On 28 February, 1914, Olivia Maude Fisher and William R. G. Fisher, two of the children named in the will of said B. J. Fisher, filed a petition or complaint in said action then pending in the Superior Court of Guilford County, in which they alleged that they and their sister, Millicent Rosa Fisher (then a minor), were the owners of the property described above, and other property of the Fisher estate, subject to the life estate of their mother, Isabella Fisher; the petition further asked for an accounting by the trustee; that the trustee be removed, and that the children be placed in control of the property. Upon the filing of the petition, a guardian *ad litem* was appointed for Millicent Rosa Fisher, infant defendant, and one of the class of remaindermen under the will of B. J. Fisher, and the guardian *ad litem* filed an answer, which is shown in the printed record of such case.

6. Thereafter a referee was appointed, who filed his report, which is fully set out in the printed record. In his conclusions of law are the following:

"Under and by virtue of the terms of the last will and testament of B. J. Fisher, deceased, Isabella Fisher was devised a life estate in all the property of B. J. Fisher in America, both real and personal, with the use and disposal of all moneys accruing annually, to have and enjoy the same during her life or widowhood. The petitioners, Olivia Maude Fisher, William Randolph Grover Fisher, and Millicent Rosa Fisher are the owners in fee of said estate, subject to the rights and estate of the said Isabella Fisher."

7. At the October Term, 1914, of the Superior Court the judge signed an order, or judgment, which provided, among other things:

"C. A. Bray, as trustee, may be relieved of any further responsibility as such trustee, upon turning over and transferring to Isabella Fisher, administratrix *cum annexo testamento* of B. J. Fisher, Isabella Fisher individually, Olivia Maude Fisher, and W. R. G. Fisher, all of said property and effects now in the hands of such trustees belonging to said estate."

8. At the March Term, 1915, of the Superior Court, exceptions to the report of the referee were heard and judgment entered, which provided, among other things, as follows:

"It is therefore ordered, adjudged, and decreed that all the exceptions filed by defendants be, and the same are hereby, overruled, and the findings of fact and conclusions of law of the said referee be, and the same are hereby, in all respects confirmed."

9. From the judgment confirming the report of the referee there was an appeal to the Supreme Court of this State, in which the entire record went to said Court, and after reviewing the case, the Court delivered its opinion, which is set out in 170 N. C., 378, and made a part of this case.

10. Elsie May Fisher, one of the children of B. J. Fisher, named in his will, died before reaching the age of 21 years, and never married; Millicent Fisher reached the age of 21 about the time, or soon after the time, the litigation hereinbefore referred to was concluded. Isabella Fisher, widow of B. J. Fisher, is now 60 years or more of age; Olivia Maude Fisher is about 35 years of age; William R. G. Fisher is about 28 years of age, and Millicent Rosa Fisher is about 24 years of age.

The defect in the title of plaintiffs is alleged to arise out of the provisions in the will of B. J. Fisher, the material part of which is as follows, the paragraphs being renumbered:

"1. I give, devise, and bequeath to my daughter, Lillian Brenda Fisher, of Chester House, Wellingboro, Northampton, England, all my property of all kinds and description, in Great Brittain, in fee simple absolutely.

"2. I give, devise, and bequeath to my beloved wife, Isabella Fisher, all my property in America, both real and personal, to her use and disposal all moneys accruing annually, to use and enjoy the same during her life, if she shall so long continue my widow, and from and after her decease, or second marriage (whichever shall first happen), all her interest in my estate shall cease and be forever lost.

"3. At the death or remarriage of my wife, Isabella Fisher, my will and desire is that all my property in America be divided equally between my children, to wit: Olivia Maude, Elsie May, William Randolph Grover, Millicent Rosa, provided, they have arrived at the age of 21 years, or if any of my said children have married and died, leaving sur-

viving a child or children, it or they to have that portion which would have fallen to its mother or father (as the case may be) had he or she been living.

"4. In the event of the death of my wife, as aforesaid, before the children arrive at the age of 21 years, then the whole of my property is to go into the hands of my executor hereinafter named, and he shall collect all moneys and interest, and shall expend them for the use and benefit of my children as aforesaid, who are under the age of 21 years, but shall hand over to those over the age of 21 years that division to which they are entitled of annual interest.

"5. All moneys not applying or necessary to be spent for my children under 21 years to be invested in United States Government securities for all my said children, and when all have arrived at the age of 21, then this general fund and all other properties to be divided between my said children, and by themselves, so that each shall have an equal share of my estate.

"6. That each child, when it arrives at the age of 21 years, shall have a voice in the management of the property embraced in this will, and after two of them have arrived at the age of 21, then these two, in the event of disagreement with my executor or administrator *de bonis non* with the will annexed, shall have full power to remove said administrator with the will annexed, and shall have power to appoint another administrator, and the former shall cease to have any further interest or management of said property."

There was no objection to the form of the deed tendered by the plaintiffs, or to its sufficiency to pass whatever title the plaintiffs had, but the only contention is that their title, as conveyed by the deed, is defective, and is not indefeasible.

The court gave judgment against the plaintiffs, and they appealed.

*F. P. Hobgood, Jr., Brooks, Sapp & Kelly, and Charles A. Hines for plaintiffs.*
*Roger W. Harrison for defendants.*

WALKER, J., after stating the case as above: The proper construction of this will is that Mrs. Fisher should have the estate for her life or widowhood, and at her death, or remarriage, it should go to her children, provided they have then arrived at the age of twenty-one years, and any one of them who has attained that age shall have his, or her, share ("or division") of annual interest, or income, and, as to those under age, their shares shall be held by the executor, for the purpose of being expended by him for their use and benefit. As each becomes of age, he or she shall have a voice in the management of the property, etc.,

but when all have attained the age of twenty-one years, there shall be a general division among them, "and by themselves," if the widow is dead or remarried, so that each shall have an equal share of the testator's estate.

Defendant contends that the defect in the plaintiff's title arises out of the provision that if any one of his children has married, and died, leaving a child or children surviving, "it or they to have that portion which would have fallen to its mother or father (as the case may be) had he or she been living." The widow is still living, without having remarried.

Plaintiffs contend that an estate in fee was vested in Mr. Fisher's children absolutely, and indefeasibly, when the testator died, or, at the latest, when the youngest child, Millicent Rosa Fisher, came of age, and that if this is not the true meaning, such an estate was vested by force of the proceedings and judgment in the case of *Fisher et al. v. Fisher et al.,* above mentioned, because the very question was so adjudicated therein, and the judgment is conclusive, in that respect, as a *quasi judgment in rem,* upon the whole world.

Defendant contends that it did not so vest until the time for the division, that is until the death or remarriage of the widow, and the coming of age of all the children, and that, until the happening of both events, it cannot be determined whether Mr. Fisher's children, or his grandchildren, will take under the will. The plaintiffs contend that the material part of the third item of the will should be construed as if it read: "Provided, they have arrived at the age of twenty-one years, or, if any of my said children have married and died *before arriving at the age of twenty-one years,* leaving surviving a child or children, it or they to have that portion which would have fallen to its father or mother," etc.; and defendants contend that it should be construed as if it read: "Provided they have arrived at the age of twenty-one years, or, if any of my said children have married, or died *before the time of division,* leaving surviving a child or children, it or they to have that portion which would have fallen to its mother or father," etc. The difference is in the words italicized.

We will first undertake to construe the will, and then take up the question as to the effect in law of the former judgment.

As between the two views, we are of the opinion that the defendants' is the correct one. It will be perceived, that the division is not to take place until the death, or remarriage, of the widow, and the proviso to section 3 clearly refers to that, as the time when the estate is to vest, and not to the death of the testator, for that section says that the property shall be divided equally between the children (naming them) at the widow's death, or remarriage, provided, first, that they are then

twenty-one years old, "or if any of them have married and died, leaving surviving a child or children, it or they to have that portion which would have fallen to its mother or father (as the case may be) had he or she been living." The two provisions in regard to the arrival at full age of the children, and the death of a child, refer to the same event, namely, the death or remarriage of the widow. The will also declares that if, at the death of his widow, all the children are not of age, the division shall not take place until they are, with provision, in the meantime, for collecting and paying their share of the income to those who are of age and holding the balance, and paying it out, for the use and benefit of those under age. "All the property, both real and personal in America," was devised and bequeathed to the wife, the exact language being, "to her (the wife's) use and disposal, all moneys accruing annually to use and enjoy the same during her life, if she shall so long continue my widow." He evidently did not intend by this provision that the childrens' estate in remainder should vest absolutely until his widow's death, or remarriage, when it could be ascertained whether all of them had survived her, or some had died, in her lifetime, "leaving children surviving." Whether, therefore, children or grandchildren would take under the will was not to be determined, at the earliest, until the widow's death or remarriage. It could not have been intended that an estate in remainder should vest absolutely in the children during the life of the wife or before her remarriage, even though they had arrived at full age, as the wife was to have the property and the use thereof during her life, or before her remarriage. The children might not attain full age before the widow's death, or remarriage. He directs that at the death or remarriage of his widow the property shall be equally divided among his children, if *then* of age, the child of any deceased child to represent its parent. All these provisions would seem clearly to exclude the idea that his children were to have an indefeasible estate until his wife's death or remarriage. The arrival of the children at their majority was referred to as the time for them to enjoy their estate in possession, and not necessarily for its vesting in interest. If the widow had remarried, or died, and the children had arrived at full age, the two events would have occurred upon which the estate was intended to vest absolutely in interest and possession. The provision as to the time when all the children should arrive at full age was merely to determine when, after their mother's death or remarriage, the general division should take place, and they should receive the actual possession of the property. It clearly was not intended to fix the time when their estates should become absolute and indefeasible, regardless of whether their mother was then living. It will be easily deduced from this construction that the children may eventually cease to have any interest, and that even if

they marry and have children, some of them may not survive their parents, and only those who do survive them and the widow will take under the will, in the place of their parents. The construction of the will makes the estate of the children a defeasible fee, for they may never take, as the mother may survive all of them, in which event their children would take in their places, and then, not by descent from them, as in *Whitfield v. Garris,* 134 N. C., 24, but directly from the devisor, under his will, as purchasers.

This case is controlled by what is said in *Jenkins v. Lambeth,* 172 N. C., 466, that the general rule as to when the heirs of the testator who are to take must be ascertained, the rule being that it must be done as of the time of his death, may be modified by the terms of the will indicating a different time, and that they must be ascertained at the termination of the life estate, if the language shows such to have been the intention. *Harrell v. Hagan,* 147 N. C., 113; *Rees v. Williams,* 164 N. C., 132, and cases there cited. The general rule just mentioned is not one of substantive law, like, for instance, the rule in *Shelley's case,* but one of interpretation or construction, as some other rules are, which were adopted as aides to us in determining the true will and intention of the testator. *Jenkins v. Lambeth, supra; Heard v. Read,* 169 Mass., 216. As said in the *Jenkins case,* the general rule will yield when, construed by accepted principles, the intent and meaning of the instrument is to clearly postpone the time for ascertainment of the heirs to a later period. And further it was said: "The deed, then, by its terms and meaning having fixed upon the death of the life tenant as the time when the heirs of the grantor should be ascertained, under our authorities his Honor was right in holding that the limitation is still a contingent one, the person to take being uncertain," citing *Rees v. Williams,* 164 N. C., 128 *(S. c.,* 165 N. C., 201); *Latham v. Lumber Co.,* 139 N. C., 9; *Bowen v. Hackney,* 136 N. C., 187; *Hunt v. Hall,* 37 Me., 363 (also cited in *Bowen v. Hackney, supra*), and Fearne on Cont. Rem., Class 4. Whether this is a contingent remainder, or executory devise, or a vested remainder subject to be divested upon a condition subsequent, the result will be the same, viz., that the children of Mrs. Fisher cannot, by deed, alien the property freed from the contingency by which their estate may be divested. *Pendleton v. Williams,* 175 N. C., at 253, citing the authorities sustaining that proposition. See, also, *Bowen v. Hackney, supra.* But it seems to us that *Bowen v. Hackney, supra,* although not altogether like this case, so nearly resembles it as to be an authority in favor of our construction of this will. We there said: "It can make no difference in this case whether the remainder to each child was contingent or vested, but subject to be divested by its death before that of the life tenant. If the remainder to the children of the testator at the death

of their mother is not contingent, it can only be vested, subject to be divested as to any child who predeceased the mother, for it was surely intended that the representatives of any deceased child should take, not by descent but by purchase, that is, nothing from the parent, but all from the devisor."

And the case of *Hunt v. Hall,* 37 Me., 363 (cited in *Bowen's case*), is more especially applicable, as the terms of the will in that case were strikingly like those of the Fisher will we are construing. The limitation there was "after the decease of my dear wife my will is that my executors hereinafter named cause an equal division to be made among all my children and the heirs of such as may then be deceased." With reference to this devise that Court said: "The persons who are to take are not those who are living at the death of the ancestor. The division is not then to take place. This is to be done at a subsequent and uncertain period. If the estate were to be construed as vesting at the death of the testator an heir might convey by deed his share of the estate, and if he should decease before the termination of the life estate, leaving heirs, his conveyance would defeat the estate of such heirs. This would be against the express provisions of the will, which provide that the estate should be divided among the children and the heirs of such as may then be deceased. Till then there is a contingency as to the persons who may take the estate." The only distinction between the two cases, though they are not anywise different, is the substitution of the word "heirs" for the word "children." The limitation in *Whitesides v. Cooper,* 115 N. C., 570, was not materially different from the one under consideration, bearing in mind what we have before said, that it makes no difference whether the estate here is contingent or is vested, but subject to be divested upon the happening of a specified event. The limitation in *Whitesides v. Cooper* was: "At the death of my wife the said plantation, with all its rights and interests, I bequeath and devise to our seven sons (naming them), or such of them as may be living at their mother's death, and to their heirs, share and share alike; and if any one or more of our said sons should be dead, leaving lawful issue, said issue shall take the deceased father's share in each and every such case." In that case the Court cited *Starnes v. Hill,* 112 N. C., 1; *Watson v. Watson,* 56 N. C., 400; *Williams v. Hassell,* 74 N. C., 434; *Young v. Young,* 97 N. C., 132; *Miller ex parte,* 90 N. C., 625, and *Watson v. Smith,* 110 N. C., 6, to sustain its ruling and as authority for the position that where "the contingent remainders limited on the termination of the life estate are to such of her children as are then living, and to the then living issue of such as have died leaving issue, it is impossible to tell who will be entitled when the life tenant dies."

Speaking of the limitations of fees which take effect alternatively, or as substitutes one for the other, Mr. Fearne (3 Am. Ed.), 373, says: "However, we are to remember that although a fee cannot, in conveyances at common law, be limited on a fee, yet two or more several contingent fees may be limited merely as substitutes or alternatives one for the other, and not to interfere, but so that one only take effect, and every subsequent limitation be a disposition constituted in the room of the former, if the former should fail in effect."

And further he says: "But at this day, such limitations may be good in a will or by way of use upon a contingency that may happen within a reasonable period; though this not by way of direct remainder, but by way of executory devise, or springing or shifting executory use." Fearne, p. 373. See, also, *Smith v. Brisson,* 90 N. C., 284, where *Justice Ashe,* in discussing very ably and learnedly the doctrine of shifting uses, says: "It was under this doctrine of a shifting use that it has been held since very early after the statute of uses, that a fee simple may be limited after a fee simple, either by deed or will; if by deed, it is a conditional limitation; if by will, it is an executory devise. And in both these cases a fee may be limited after a fee," citing 2 Blackstone Com., 235.

In this connection, and as bearing upon the question that the children of a deceased child of Mrs. Fisher, who survived their parent, would not be bound by such deceased child's deed, because the surviving children of any deceased child would not claim under its parent, but under the will of the devisor. See *Whitesides v. Cooper, supra,* 570-577; *Starnes v. Hill, supra,* at 13 and 26; *Moore v. Parker,* 34 N. C., 121.

*Chief Justice Shepherd* says, in *Starnes v. Hill, supra,* at p. 13: "We are therefore of the opinion that R. O. Patterson took but a contingent remainder, and that until the happening of the contingency, the rule in *Shelley's case* could not operate so as to defeat the contingent remainders of his heirs as purchasers. Granting, however, that the limitation could possibly be construed to vest in him a present interest so as to put in operation the rule in *Shelley's case,* still he would take but a defeasible estate, as under all of the authorities his failure to survive his wife would operate (if we can venture to use the expression in reference to such a limitation) as a condition subsequent, by which his estate would be divested in favor of said heirs. So, treating the limitation either way, the plaintiff has not acquired such an absolute estate in fee as is necessary to enable him to comply with the terms of the contract which he seeks to enforce against the defendant. It may be further observed that the position that the warranty in the deed of the life tenant can defeat the remainder of the said heirs by way of rebutter, is wholly untenable. The Code, sec. 1334; *Moore v. Parker,* 34 N. C., 123." We also refer to *Rees v. Williams,* 164 N. C., 128 (165 N. C., 201, on rehear-

ing); and *Latham v. Lumber Co.,* 139 N. C., 9, where the contingent quality of such limitations was considered.

The intention of the testator appears more manifest when we consider that he devises the property, and the use thereof, to his wife for life or widowhood, and then provides, not for the vesting of an estate in his children before his wife dies, but for its management after her death and until all of them arrive at maturity, each child, as he or she comes to full age, to have his or her share of the income, the rest, or so much as is necessary, to be held for the support of the minors, until all are twenty-one years old, when the division is to be made, if Mrs. Fisher is then dead, with special provision for a "voice of the children" in the management of the estate, it will show clearly that the children do not acquire an estate absolutely vested, until Mrs. Fisher's death. *Whitfield v. Douglas,* 175 N. C., 46-48, and cases therein cited; *Campbell v. Cronly,* 150 N. C., 458; *Smith v. Lumber Co.,* 155 N. C., 389, and especially at pp. 393-394. Under this construction of the will of Mr. Fisher, the plaintiffs cannot convey a good title to the purchaser of the land, who is one of the defendants.

But the plaintiffs further contend that it was adjudged in *Fisher v. Fisher* that the children of Mr. Fisher "are the owners in fee of the property, subject to the rights and estate of Mrs. Fisher." The suit was originally brought to have a commissioner and receiver appointed to manage and sell the property to pay the debts of Mr. Fisher, who, at the time of his death, was largely involved. Mr. A. L. Brooks was appointed and managed the estate with so much skill that it was relieved of Mr. Fisher's debts, and a large and valuable portion of it was saved for the children. Mr. Brooks resigned and Mr. Bray was appointed as his successor. After he had been in office for some time, the widow and children moved in that cause for an accounting by Mr. Bray, as trustee, and his discharge, and that the property be turned over to them, a reference was ordered, report filed and confirmed, and a full settlement had with Mr. Bray, who was thereupon discharged from further service and liability, and the remaining property and effects were ordered by the court to be turned over to the widow, as administratrix with the will annexed of Mr. Fisher and the children, by Mr. Bray, the trustee, which was accordingly done by him. The referee found and concluded that Mr. Fisher's children (naming them) were "the owners in fee of said remaining estate, subject to the rights and estate of the said Isabella Fisher," the widow. It will be seen, therefore, that the widow and children, who now tender the deed to the purchaser of the land sold by them to him, did not buy this land under any order in that proceeding, but Mrs. Fisher, as administratrix *c. t. a.* merely received back the property not theretofore sold, or otherwise disposed of. Their motion was

for an account and settlement with Mr. Bray and his, discharge, and that the property and effects in his possession, as trustee, be delivered to Mrs. Fisher as administratrix. There is no mention in any of the proceedings of the grandchildren of Mr. Fisher or their contingent interests. They were not made parties by the appointment of a guardian *ad litem,* or otherwise. There is not now any of them *in esse.* The Court was not required to pass upon the particular kind of estate Mrs. Fisher or her children had in the property, and it was not at all within the scope of the cause of action. They merely asked that the property and estate be returned to them, such as they had when they made their motion. It was not necessary to pass upon their title or the nature of their estate. Their claim was fully satisfied when the Court ordered the property to be returned to them. It is said in *Whitesides v. Cooper, supra,* at 577-578: "The life tenant (Catherine) having died in 1887, the plaintiffs' contention must be sustained, unless they are bound by the decree of sale. Neither these plaintiffs (if indeed they were in existence at that time), nor their father were parties to the proceeding; but it is insisted that they were represented by others of the same class, or at least by the life tenant. It is plain that the other parties could not represent these plaintiffs as a part of the same class, and upon this point it is only necessary to refer to *Irvin v. Clark,* 98 N. C., 437, and the authorities therein. cited. Equally untenable is the position that these contingent remaindermen were represented by the life tenant. This would be a very radical departure from well settled principles, and has received no countenance from this Court."

Speaking of an adjudication outside of the matter involved or the scope of the issue, the Court held, in *Munday v. Vail,* N. J. L., p. 418: "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and, third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that because A. and B. are parties to a suit, that a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court,

and it is only over those particular interests which they choose to draw in question that a power of judicial decision arises."

And again: "The validity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely on the ground of common justice. A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels. But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus, *Lord Coke,* treating of this doctrine, says: 'A matter alleged that is neither traversable nor material shall not estop,'" citing Co. Litt., 352-b.

In *Hobgood v. Hobgood,* 169 N. C., 490, this Court said, in applying the doctrine just stated, the above statement of it being quoted and approved: "It was urged for the appellant that the former decree established an interest in the fund in favor of the children of Pattie Pippin and Mollie Hobgood, and the present decree having also recognized such an interest, the same not having been appealed from, may not now be disturbed; but we are of opinion that, on the record, such a position cannot be sustained. The former decree, as stated, was designed and intended to preserve the fund in lieu of the property and to subject it to the terms and limitations of the devise, and, while the court below, misconstruing the devise, may have undertaken to recognize an independent interest in the children, there was nothing in that proceeding that conferred any such power on the Court."

The Court then referred to the passage taken from the *New Jersey case, supra,* and further said: "A similar ruling was made by the same eminent Court in *Dodd v. Una,* 40 N. J. Eq., 672, where the position was applied and sustained in learned opinions by *Magie, J., Dapue, J., concurring,* and the general principle has been recognized in this jurisdiction in *Springer v. Shavender,* 118 N. C., 40, and *Allred v. Smith,* 135 N. C., 443, the New Jersey decision, referred to, being cited with approval in the first of these cases."

But neither the referee nor the court intended to decide any question concerning the particular nature of the estate limited over to the grandchildren. It was right to say that the children had a "fee," for it was such an estate, though a defeasible one. It surely was not the purpose of the learned referee to deny the right of the surviving child of any deceased child of the testator to take under the will. The court had no power to do so, and never intended to make any such decision, and the

referee does not say that the children are the absolute owners in fee. The order of Judge Devin merely took the property out of the possession of Bray and turned it back to Mrs. Fisher and the children to be held according to their rights under the will, and just as they had held it before the suit was brought, and this left but one question to decide, and that was the correctness of Mr. Bray's account, and the order of Judge Devin shows inferentially that he was of that opinion. Neither party seemed to attach any special significance to the finding as to the title, for such matter was clearly not involved.

The plaintiffs contend that the judgment was one *quasi in rem,* and affected and concluded all persons, whether parties to or not. We have said that the court had no jurisdiction to decide as to the title of unborn grandchildren, and did not, in fact do so. The judgment does not, therefore, conclude as to their title. Mr. Black, in his excellent treatise on Judgments (2 ed.), 2 vol., sec. 793, states clearly the difference between actions strictly *in rem* and those which are designated as actions *quasi in rem,* and quotes extensively from *Freeman v. Alderson,* 119 U. S., 187, as giving a most satisfactory definition of these terms, the one being against property which is considered as the instrument of the wrong, where the court acquires jurisdiction over the thing by seizure, and proceeds by citation to the world, where the owner may come in if he likes and vindicate his right to it. The Court then says: "There is, however, a large class of cases which are not strictly actions *in rem,* but are frequently spoken of as actions *quasi in rem,* because, though brought against persons, they only seek to subject certain property of those persons to the discharge of the claim asserted. Such are actions in which property of nonresidents is attached and held for the discharge of debts due by them to citizens of the State, and actions for the enforcement of mortgages and other liens. Indeed, all proceedings having for their sole object the sale or other disposition of the property of the defendant to satisfy the demands of the plaintiff, are in a general way thus designated. But they differ, among other things, from actions which are strictly *in rem,* in that the interest of the defendant is alone sought to be affected, that citation to him is required, and that judgment therein is only conclusive between the parties." Mr. Black then proceeds to give illustrations of such an action, as follows: "Partition proceedings, or proceedings to quiet title, or to remove clouds from title." In neither case is it held that a party can be divested of his property by a proceeding to which he is not a party, and of which he has had no notice, not even by general citation to the world. This contention has no merit, as it is perfectly plain that a person cannot be deprived of his property by any such method as relied on in this case. The children of Mr. Fisher could not represent the ultimate devisees, because they are not of the same

class, and their interests are really hostile, as it would be best for them that the interests of the grandchildren be destroyed, in which event they would acquire the fee simple absolute.

This case is not governed by the Act of 1903, ch. 99 (Pell's Rev., sec. 1590), or the Acts of 1905, ch. 548. It is said by *Justice Hoke,* in *Dawson v. Wood,* 177 N. C., at 162: "In this jurisdiction, and on the facts thus presented, the courts have not had the inherent power to decree a sale of property and pass a valid title to the purchaser, the remainder here being limited on a contingency that would prevent the ascertainment of the ultimate takers, or any of them, till the death of the life tenant," citing *Hodges v. Lipscombe,* 128 N. C., 57; *Aydlette v. Pendleton,* 111 N. C., 28; *Williams v. Hassell,* 74 N. C., 434; *Watson v. Watson,* 56 N. C., 401. He then refers to the above statutes as applying only to the class therein named, and for the purposes therein expressed; that is, for a change of investment, and that a guardian *ad litem* must be appointed to represent the contingent remaindermen. But our case is clearly not embraced by any of these statutes, and, besides, the suit was not brought under them, nor any facts alleged which will make them applicable. This is not a suit for a change of investment, and never has been, in any feature of it. In this connection, it will be proper and pertinent to state what is appositely said in *Whitesides v. Cooper, supra,* at p. 578: "Neither is there any force in the contention that our case falls within the principle of *England v. Garner,* 90 N. C., 197, and other decisions in which the Court has gone very far in sustaining judicial sales. It is not pretended that these plaintiffs, even if *in esse,* were represented by guardian or by any one claiming to be their attorney. Indeed, they are not mentioned as parties in any stage of the proceeding, nor is there anything in the decree which purports to bind their contingent interests."

In this case, if we upheld the plaintiffs' contention, it would result in depriving the ulterior devisees of their rights, without any kind of hearing, or any kind of representation in the action, which is contrary to the spirit of the law, even in the case of contingent interests.

We know of no law which would justify us in so holding, and thereby commit so great an injustice.

This decision has nothing to do with the validity of titles acquired under sales heretofore made in this suit by order of the court where it is pending. They may be protected by another principle. *Yarborough v. Moore,* 151 N. C., 116, citing *Carraway v. Lassiter,* 139 N. C., 145. But we do not say how this is, as that question is not before us. The court must have jurisdiction of the cause and the parties before even a purchaser at a judicial sale will be protected, *Yarborough v. Moore, supra,* and that being so, it cannot surely deprive a person of his interest

in property without giving him any chance to be heard. Even by the statutes relating to the sale of contingent interests, the rights of the owners are carefully guarded.

After a most careful deliberation, and with a full realization and appreciation of the important result which may flow from our decision, we have concluded that his Honor, Judge Bryson, was correct in his ruling that the plaintiffs cannot comply with their contract and pass a good and indefeasible title, by their deed, to the land purchased by the defendants.

Affirmed.