Civil action, tried on pleadings and the admissions of the parties in the cause, a jury trial having been formally waived. The action is instituted to enforce an agreement entered into between plaintiff and defendants concerning the sale of certain lands by defendants to plaintiff and a restoration of part of the purchase price to plaintiff, and on the hearing it was properly made to appear that B. J. Fisher, formerly of Asheboro, N.C. died on 15 April, 1903, owning at the (590) time valuable real estate situated in Greensboro, N.C. and also in England, and leaving him surviving as his devisees and heirs at law his widow and their four infant children, Olivia Maude, Elsie May, William Randolph, and Millicent Rosa, and also a daughter in England by a former wife, Lillian Brenda Fisher. That in said will, duly admitted to probate and recorded, said testator disposed of the said real estate, including the property in controversy, as follows:
"2. I give, devise, and bequeath to my daughter, Lillian Brenda Fisher, of Chester House, Wellingboro, Northampton, England, all my property of all kinds and description in Great Britain, in fee simple absolutely.
"3. I give, devise, and bequeath to my beloved wife, Isabella Fisher, all my property on America, both real and personal, to her use and disposal all moneys accruing annually, to use and enjoy the same during her life, if she shall so long continue my widow, and from and after her decease, or second marriage (whichever shall first happen), all her interest in my estate shall cease and be forever lost.
"4. At the death or remarriage of my wife, Isabella Fisher, my will and desire is that all my property in America be divided equally between my children, to wit, Olivia Maude, Elsie May, William Randolph Grover, Millicent Rosa, provided they have arrived at the age of 21 years, or if any of my said children have married and died, leaving surviving a child or children, it or they have that portion which would have fallen to its mother or father (as the case may be), had he or she been living.
"5. In the event of the death of my wife, as aforesaid, before the children arrive at the age of 21 years, then the whole of my property is to go into the hands of my executor hereinafter named, and he shall collect all moneys and interest, and shall expend them for the use and benefit of my children as aforesaid, who are under the age of 21 years, but shall hand over to those over the age of 21 years that division to which they are entitled of annual interest. *Page 633 
"6. All moneys not applying or necessary to be spent for my children under 21 years to be invested in United States Government securities for all my said children, and when all have arrived at the age of 21, then this general fund and all other properties to be divided between my said children, and by themselves, so that each shall have an equal share of my estate."
That on or about 5 December, 1909, Elsie May Fisher, one of the children above mentioned, died, a minor without issue, or ever having married. That later, in 1914, under the terms of said will and by order of court in a pending cause, the property and the control and management of the same was turned over to Isabella Fisher, administratrixcum testamento annexo, and Isabella Fisher, individually, (591) and Olivia Maude Fisher, and W. R. G. Fisher, the children who had then become of age. And thereafter a large indebtedness having accumulated against the property by reason of improvements, taxes, assessments, and insurance thereon to the amount of near $50,000. Mrs. Fisher and her three surviving children, including Millicent Rosa, who had at that time also come of age, sold a portion of said property in Greensboro on the corner of East Market and North Elm streets, to the American Exchange National Bank for $135,000, and contracted to sell two other pieces of said property, including that now in controversy to defendants, for $95,375, receiving a part of purchase money in cash and the remainder secured by a first mortgage on the property. That these defendants, after subdividing the property, resold same to different parties, one lot being sold to L. M. Humphrey at a stated price, and a second lot sold to the plaintiff corporation for $36,300, plaintiff paying in cash $9,300 of said purchase price and giving notes and mortgage for remainder of same, etc. That said Humphrey, purchaser of one of the lots, having refused to pay on the alleged ground that the vendors holding under the deed from Mrs. Fisher and children, did not have a good title to the property, defendants instituted suit to test the question, and same was carried by appeal to the Supreme Court, and it was held that, for reasons stated in the decision, Thompson v. Humphrey, 179 N.C. 44, under the will the Fisher children had only a contingent interest in the property, and on the facts as there presented, their deed would not convey an indefeasible title. Pending the case, plaintiff and defendants entered into the agreement now sued upon and later enlarged to the effect that if the Court should hold against the validity of the deed by Mrs. Fisher and her children, and defendants were unable to perfect the title offered by them, in that case the contract of sale between plaintiff and defendants should be set aside, the money paid by plaintiffs returned to them, and their notes canceled and surrendered. That pending the said *Page 634 
suit between defendants and Humphrey, or as soon as the decision in the cause was announced, Mrs. Fisher and her surviving children, together with the defendants, instituted a civil action under C. S. 1744, to obtain a sale of said property from Mrs. Fisher and her children at the price of $95,375, on averment that the property was affected by contingent interest, that the sale as made was a most desirable and advantageous one for the estate, and all persons having an interest therein, and in said suit Mrs. Fisher as administratrix cum testamento annexo
of her husband and as an individual, and her three surviving children, together with the present defendants, were made plaintiffs, and "the unborn children of Olivia Maude Fisher, William Randolph Fisher, and Millicent Rosa Fisher, and all others having contingent interest (592) in the estate," were described as defendants, and on petition and inquiry duly instituted, Mr. O. C. Cox was regularly appointed guardian ad litem, representing all persons having contingent remainders or other contingent interest in the property under said will, etc. In the petition Mrs. Fisher, as administratrix and as an individual, and her children, bring into court all the proceeds of the sales had by them over and above the amount paid out on the accumulated debts, which constituted valid liens of the property, describing how they are now invested, and submitting such investments and property to the court's jurisdiction, and pray that the same, as agreed upon by them, be carried out and confirmed. The cause having been fully heard, the court, at March Term, 1920, his Honor, P. A. McElroy, presiding, found the facts and entered his judgment as follows:
NORTH CAROLINA — GUILFORD COUNTY, March Term, 1920.
Isabella Fisher, administratrix c. t. a. of B. J. Fisher, deceased, Isabella Fisher, individually, Olivia Maude Fisher, William Randolph Fisher, Millicent Rosa Fisher, American Exchange National Bank of Greensboro, N.C. J. F. Thompson, J. E. Stockwell, G. L. Stanbury, and J. E. Faulkner,
against
The unborn children of Olivia Maude Fisher, William Randolph Fisher, and Millicent Rosa Fisher, and all other heirs at law or contingent remaindermen under the will of B. J. Fisher, deceased.
It appearing to the court that a petition in the above entitled proceedings was filed in this court on 9 March, 1920, and that thereafter O. C. Cox, of Greensboro, N.C. was appointed guardian ad litem to represent the interest of contingent remaindermen who are not in esse, *Page 635 
or who cannot be ascertained; that said guardian ad litem has been duly served with summons herein and has filed an answer to said petition; and the court finding from the petition and answer the following facts, to wit:
That B. J. Fisher died in the city of New York, 15 April, 1903, leaving a last will and testament, copy of which is attached to the petition herein, marked "Exhibit A," and made a part thereof; that said last will and testament was duly admitted to probate in the surrogate's court in the State of New York, and thereafter, to wit, on 3 August, 1903, Isabella Fisher duly qualified and was appointed by said court administratrix with the will annexed; that a copy of said last will and testament has been duly and regularly admitted to probate or recorded in the office of the clerk of the Superior Court of Guilford County, as provided by law, and letters testamentary, with the will (593) annexed, have been duly issued to Isabella Fisher; that said last will and testament of B. J. Fisher is recorded in the office of the clerk of the Superior Court of Guilford County in Book "G," page 367; that prior to and at the time of his death said B. J. Fisher was the owner and in possession of several valuable lots and houses and other unimproved real estate in the city of Greensboro, county aforesaid, a portion of which is described in the petition; that on 1 February, 1904, in an action entitled "Isabella Fisher, administratrix, et al., versus
Olivia Maude Fisher et al.," A. L. Brooks was appointed receiver and commissioner to take charge of the estate of the said B. J. Fisher, deceased, under the control and direction of the court, and that thereafter said estate was administered by A. L. Brooks, receiver, and C. A. Bray, trustee, as will more fully appear from the record of that action on file in the office of the clerk of the Superior Court of said county.
That Elsie May Fisher died while an infant, on or about 6 December, 1909, unmarried and without leaving surviving her any child or children; that the other three children named in paragraph four of said will are petitioners herein, and that none of same have ever married; that each of said surviving children is now, and was at the time hereinafter mentioned, more than 21 years of age; that during the time said C. A. Bray was trustee of said estate he secured an order of court permitting him to erect a building upon the lot belonging to said estate situated at the corner of North Elm and East Market streets, and pursuant to said order said building was erected and an indebtedness of $40,000 was incurred by reason thereof, and a deed of trust securing said indebtedness was authorized and made a lien upon said property; that both of the parcels of land described in the petition had small buildings thereon, and were not yielding to petitioner anything *Page 636 
like 6 per cent upon the sale price thereof, after the payment of insurance, taxes, repairs, and other expenses; and Isabella Fisher, Olivia Maude Fisher, William R. G. Fisher, and Millicent Rosa Fisher found that the estate was being gradually depleted and lessened, and after the payment of expenses the income was not sufficient for the proper care and maintenance of said Isabella Fisher; and plaintiffs were compelled to borrow money from time to time, hypothecating said property until at the times hereinafter alleged the total indebtedness against the same amounted to $50,000; that at the October Term, 1914, of Guilford County Superior Court the court signed an order or judgment in the action of Isabella Fisher et al. versus Olivia Maude Fisheret al., which provided, among other things: "That the said C. A. Bray, as trustee, may be relieved of any further responsibility as such trustee, upon turning over and transferring to Isabella Fisher, administratrix (594) c. t. a. of B. J. Fisher, Isabella Fisher, individually, Olivia Maude Fisher, William R. G. Fisher, and Millicent Rosa Fisher, all of said property and effects now in the hands of said trustees belonging to said estate."
That at the March Term, 1915, of said court, the court rendered judgment affirming a report of a referee, which referee had held that Isabella Fisher was devised a life estate in all the property of B. J. Fisher in America, and that Olivia Maude Fisher, William R. G. Fisher, and Millicent Rosa Fisher are the owners in fee of said estate, subject to the rights in said estate of Isabella Fisher, as will appear from the judgment roll in said case; that said Isabella Fisher, and her children as aforesaid, and the other plaintiffs herein, believed that the said Isabella Fisher owned a life estate in the real estate described in the petition, and that Olivia Maude Fisher, William R. G. Fisher, and Millicent Rosa Fisher owned the remainder in fee simple as tenants in common; that on account of the very small income derived from said property, and the inability of said Isabella Fisher and children to improve or erect larger buildings upon said property, they decided to sell said lands and invest the principal in interest-bearing securities; that pursuant to said intention, the said parties entered into a contract to sell and convey to the American Exchange National Bank for the sum of $135,000 that tract or parcel of land in the city of Greensboro, said county and State, at the northeast corner of the intersection of Elm and Market streets, which is fully described in deed from Isabella Fisher et al. to American Exchange National Bank, recorded in the office of register of deeds of Guilford County, in Book 298, page 95; that on or about 18 July, 1919, said parties contracted to sell and convey to J. F. Thompson, J. E. Stockwell, G. L. Stansbury, and J. E. Faulkner, for the sum of $95,375, the two tracts or parcels of land *Page 637 
lying and being in the city of Greensboro, on the east side of Elm Street, adjoining Howard Garner and others, and fully described in deeds recorded in Book 327, pages 209 and 260, which deeds were executed, pursuant to said agreement; that out of the $135,000 received from the American Exchange National Bank, Isabella Fisher paid off and discharged a deed of trust and other indebtedness against said property in the sum of about $50,000, and of the remainder invested $72,000 in Guilford County bonds, bearing 5 per cent interest, and $13,000 in Liberty Bonds.
That said J. F. Thompson and associates paid in cash for the property sold them as aforesaid the sum of $20,875, and executed and delivered to Isabella Fisher and children, a first mortgage deed in the sum of $72,500, maturing five years after date, with interest at 6 per cent, payable semiannually, which said mortgage is now outstanding and in full force; and that the $20,00 aforesaid has been invested as follows: $10,000 in Budd Manufacturing Company, Philadelphia; $5,000 in Hiawatha Coal Company, Philadelphia; $1,000 (595) in Victory Bonds; $3,000 in Liberty Bonds; $1,000 in Penny Corporation, Philadelphia; that the income from the estate of the said B. J. Fisher as it is now invested largely exceeds the income derived from the real estate aforesaid; that the prices received from said land upon the sales aforesaid were full and fair, and said sales were for the best interest of all parties interested in said property; that after the contracts of sale and conveyances as aforesaid, L. M. Humphrey, who had contracted to purchase a part of the property bought by J. F. Thompson and associates, declined to take deed for same and pay the purchase price, alleging that the said property was affected by a contingent remainder, and thereupon a test suit was brought in the name of J. F. Thompson et al. versus L. M. Humphrey, et al., and same was carried to the Supreme Court of North Carolina; that, as will be seen by reference to the opinion of the Supreme Court in said action, said Court held that there are outstanding contingent interests in said property, and that plaintiffs were, or are, the owners of a defeasible fee in said property; that the parties hereto are all the persons and partiesin esse that have any interest, present or prospective, in said land; that they desire that the purchasers of said property have a good and indefeasible title to the same; that said contracts, agreements, and sales were made for reinvestment.
That the prices offered and paid are full and fair, and were at the time same were entered into; that it is now for the best interest of all parties concerned, and especially the devisees and legatees under the last will and testament of B. J. Fisher, deceased, that said contracts, agreements, and sales be made, confirmed, and approved by this court, *Page 638 
and that the proceeds thereof, or purchase money, be invested as provided by Revisal of 1905, sec. 1590, and amendments thereto.
And the court finding these facts to be true, it is now, upon motion, ordered, adjudged, and decreed that the sale and conveyance of the property, described in paragraph 14 of the petition, to the American Exchange National Bank at the price of $135,000 be and the same is hereby in all respects approved and confirmed; and that the sale of the property, described in paragraph 15 of the petition, to J. F. Thompson, J. E. Stockwell, C. L. Stansbury, and J. E. Faulkner be and the same is hereby in all respects confirmed and approved; and that it is for the best interest of all persons concerned, and particularly the contingent remaindermen and devisees under the will of B. J. Fisher, that said property be sold and said proceeds be reinvested as provided by Revisal of 1905, sec. 1590; and to this end Charles A. Hines is hereby appointed a commissioner to execute and deliver deeds conveying to the respective purchasers the property described in the petition, absolutely in fee simple, forever free and clear from all right, title, (596) and interest of all parties in connection therewith, including life tenants, vested remaindermen, and contingent remaindermen, and all right, title, and interest of all of the devisees and legatees under the last will and testament of B. J. Fisher, deceased.
And that the proceeds from said sale be reinvested as provided by law; and that the said Isabella Fisher be and she is hereby declared and designated as trustee to hold said funds as at present invested, subject to the further order of this court as to reinvestment; that she pay the interest and income from said mortgages, stocks, and bonds to herself individually, after payment of taxes and other costs, and the principal she shall hold intact during her life, so that same may be paid, at her death, to the persons entitled thereto under the will of B. J. Fisher, deceased; that to this end she may loan said money upon first mortgage on real estate in Guilford County, or invest the same in bonds of the United States, the State of North Carolina, or Guilford County.
That she shall hold and collect the notes and deeds of trust given her by J. F. Thompson et al. for $74,500, and notes and other deeds of trust may be substituted therefor as provided in the original deed of trust, and the new notes thus substituted shall be made payable to Isabella Fisher, trustee or administratrix.
And it is further ordered that the cost of this action, to be taxed by the clerk, and including a fee of $100 to O. C. Cox, guardian ad litem, shall be paid by the petitioners herein. P. A. McELROY,
Judge Presiding. *Page 639 
And it appearing further that Charles A. Hines, commissioner, appointed for the purpose, had tendered plaintiff a fee-simple deed for the property pursuant to said decree. His Honor, Judge Webb, at said December Term, 1921, entered judgment as follows:
This cause coming on to be heard at December Term, 1921, of Guilford Superior Court, before the Honorable J. L. Webb, judge presiding, a jury trial having been waived, and being heard by consent upon the facts alleged in the complaint, and either admitted or not denied in the answer, and upon the entire record in the case of "Isabella Fisheret al. v. the unborn children of Olivia Maude Fisher et al.," summons wherein was issued from said court on or about 9 March, 1920, and upon the agreement of the parties that, if the title in plaintiff to the land in controversy is now a good and indefeasible title in fee simple, plaintiff shall take nothing by its action, but shall retain said land, but that, if said title is not now a good and indefeasible title in fee simple, plaintiff shall reconvey to defendants said land without covenants, and that defendants shall thereupon cause to be canceled of record the deed of trust executed by plaintiff to R. G. Vaughn, trustee, and the mortgage executed to defendants by plaintiff, as set out in the (597) contract of 9 September, 1919, attached to the complaint as Exhibit A and returned to plaintiff its note for $22,000 to Isabella Fisher and her children and its note for $5,000 to defendants and pay to plaintiff the sum of $9,300, with interest thereon from 9 August, 1919, together with all interest, recording fees, insurance, and taxes paid on said land by plaintiff, as set out in said contract, and otherwise comply with said contract, damages, in every particular, if any, not to exceed $100, and that plaintiff shall pay to defendants rent for said land at the rate of $90 per month from 1 August, 1919; and
The court being of the opinion and finding that plaintiff is now seized of a good and indefeasible title in fee simple in and to the lands in controversy, to wit, the land described in deed recorded at page 287 of Book 327 of the office of the register of deeds of said county.
It is now, therefore, considered, ordered, and adjudged by the court that plaintiff take nothing by its action, and defendants go hence without day and recover of plaintiff their costs of action, to be taxed by the clerk.
Plaintiff excepts and appeals from this judgment, from the ruling to the effect that the deed now held by plaintiff and offered by said commissioner convey to plaintiff a good title to the property bought by the company.
After stating the case: Under the will of B. J. Fisher, deceased, the property in controversy being a portion of that "situated in America" is devised to his wife for life, or until her remarriage, with a contingent remainder to their children, and to the children of those who had married and died leaving children prior to the time for the vesting of this estate or interest, which is the death or remarriage of the wife. This is held to be the proper construction of the will inThompson v. Humphrey, 179 N.C. 44, where the question is directly presented and determined. While the judge, in one place in that opinion, refers to the interest of these children as a determinable fee, this is evidently a mere inadvertence, and both the reasoning in the case, the authorities cited, and the direct and controlling expressions in the body of the opinion, clearly show that the interest of these children during the life, or until the remarriage of their mother, is but a contingent remainder. Cilley v. Geitner, 182 N.C. 714; Dees v. Williams, 164 N.C. 128; S. c., 165 N.C. 201; Latham v. Lumber Co., 139 N.C. 9; (598) Bowen v. Hackney, 136 N.C. 187; Whiteside v. Cooper, 115 570. This being the nature of the estate held by them, the deed of the mother and children, at the time of its execution, did not pass to defendants a good title, for if one of these children should marry and die leaving children before the vesting of their interest, these, the grandchildren of the testator, would take and hold their interest in the property directly from him and under his will, and the deed of their parents, therefore, would have no effect upon that portion of the property. Recognizing that this position would raise some questions as to the title offered by defendant, and with the purpose of perfecting same as far as it could be done, Mrs. Fisher, the life tenant, and her children, the contingent remaindermen, together with the defendants who had bought and taken the deed for the property, instituted an action under C. S. 1744, which authorizes a sale of property, in certain instances, whenever there is a vested interest in the same with a contingent remainder over to persons who are not in being, or when the contingency has not yet happened which will determine whom the remaindermen are. The purpose of this statute is not to destroy the interest of the more remote contingent remaindermen, but to enable the present owners to sell the property and make a good title to the same, to hold the proceeds as a fund subject to the claims of persons who may be ultimately entitled thereto, and with this end in view, the statute provides that when the holder of a vested interest and those in immediate remainder, who on the happening of the contingency would then take the *Page 641 
property, at the time of action commenced, join in a petition for sale those remotely interested may be represented by guardian ad litem duly appointed, and when it is made to appear that the interest of all parties require, or would be materially enhanced by it, the court may order a sale of said property, or any part thereof, for reinvestment, either in purchasing or improving real estate, etc., or invested temporarily to be held under the same contingencies, and in like manner as was the property ordered to be sold, etc. And the authorities hold that where it is shown further that the best interest of all the parties will be thereby promoted, the property may be disposed of at public or private sale, subject always to the approval of the court having jurisdiction of the matter. McLean v.Caldwell, 178 N.C. 424; Dawson v. Wood, 177 N.C. 159; Pendleton v.Williams, 175 N.C. 248; Thompson v. Rospigliosi, 162 N.C. 145. The positions more directly pertinent to the facts of this record are set forth in some of the headnotes of the Dawson case, supra, as follows:
"Proceedings to have lands sold that are subject to a life estate, with limitation over, on contingencies which will prevent the ascertainment of the remaindermen during the life of the first taker, etc., may be instituted by any person having a present or vested interest (599) in the lands. Pell's Revisal, sec. 509; C.S. 1744."
"The provisions of Laws 1905, ch. 548, requiring that the proceeds of the sale of land under the statute, where the remaindermen of contingent interests cannot be ascertained in the lifetime of the first taker, shall be reinvested in realty within two years, was removed by Laws 1907, chs. 956 and 980, leaving the matter of reinvestment somewhat in the discretion of the court, with the clear intimation that the reinvestment in realty should be made when an advantageous opportunity should be offered."
"In proceedings under the statute (Pell's Revisal, sec. 1590; C. S. 1744) to sell lands held in remainder, upon contingencies rendering the remaindermen incapable of present ascertainment, etc., the necessary parties defendant are those of the remaindermen who, on the happening of the contingency, would have an estate in the property at the time of action commenced, and those remotely interested to be represented and protected by a guardian ad litem, as the statute provides."
"Pell's Revisal, sec. 1590; C. S. 1744, providing for the sale of land affected with certain contingent interests does not in its terms or purpose profess or undertake to destroy the interests of the contingent remaindermen in the property, but only contemplates and provides for a change of investment, subject to the use of a reasonable portion of the amount for the improvement of the remainder, properly safeguarded, with reasonable provision for protecting the interest of the *Page 642 
unascertained or more remote remaindermen by guardian ad litem, etc., and is constitutional and valid."
And in the opinion in McLean v. Caldwell, supra, the Court said: "From a perusal of these cases, and the authorities cited therein, it will clearly appear: (1) That on the facts presented the court had full power to order a sale for reinvestment under the statute; (2) that the same can be effected by private negotiations, subject to the approval of the court, when it is properly made to appear that the best interest of all the parties so require. This was the course pursued and directly approved in Dawson'scase, supra; (3) that ordinarily, and on the facts of this record, the purchaser is not charged with duty of looking after the proper disposition of the purchase money, but when he has paid his bid into court, or to the parties authorized to receive it by the court's decree, he is `quit of further obligation concerning it.'"
Pursuant to these statutory provisions and with the purpose, as stated, of procuring further assurance of the title in question, Mrs. Fisher and her children and the purchasers under the deed, and with the interest of the more remote remaindermen protected by guardian ad litem duly appointed, filed their petition showing the entire (600) investments realized and held from the proceeds of the attempted sale, subjected such investments and their ownership and control of them to the orders and judgment of the court in the cause, allege and show that the sale was for the full value of the property and a highly advantageous one to all the parties in interest, and that the same was in fact necessary owing to the large and accumulating claims against the estate in the way of taxes, assessments, etc., constituting liens upon the property. On these facts being established, and the court having jurisdiction of the parties and the property, we are of opinion that the judgment confirming and authorizing the sale and directing that the fund be properly safeguarded and invested is eminently proper, and has the effect of assuring title heretofore made by defendants to plaintiff. It may be well to note that under recent statutes amending C. S. 1744, Laws 1919, chs. 17 and 259, a bond, in all cases, is required for assuring the safety of funds arising from such a sale. Steps should be taken to modify the decree of Judge McElroy in that respect, the suggested amendment, however, in no way impairing its effect in further assurance of the title.
We find no error in the present record, and judgment of the court that the defendant go without day is
Affirmed.
Cited: Midyette v. Lumber Co., 185 N.C. 426; Waddell v. Cigar Stores,195 N.C. 438; Spencer v. McCleneghan, 202 N.C. 671; Lancaster v. Lancaster,209 N.C. 677; Blades v. Spitzer, 252 N.C. 213. *Page 643 
(601)