JOHN B. WHITESIDES et al. v. C. S. COOPER et al.

*Construction of Will—Contingent Remainder—Contingency with Double Aspect—Partition—Warranty.*

1. A testator, after a limitation to his wife for life, provides as follows : " At the death of my said wife, the said plantation, with all its rights and interests, I bequeath and devise to our seven sons (naming them) *or such of them as may be living at their mother's death*, and to their heirs, share and share alike ; and if any one or more of our said sons should be dead, leaving lawful issue, said issue shall take the deceased father's share in each and every such case ": *Held*, that the limitation to each of the sons was a contingent remainder upon a contingency with a double aspect, vesting on the mother's death in case of his survival, but, in case of his death before his mother, never vesting in him, but by substitution vesting in his issue who take nothing from their father, but directly from the devisor as purchasers.

2. Where, in such case, one of the contingent remaindermen conveys his interest in the land with general covenant of warranty and dies before his mother, those in whom the estate afterwards vests are not bound by the warranty, even though they would have been his heirs, for they take by purchase and not by descent.

3. Persons to whom a remainder is limited, subject to the death of their father before the life tenant, are not bound by proceedings for partition to which the life tenant and the other remaindermen, but not their father, were parties, for, the limitations being purely legal, and not in trust, such persons could not be deemed to be rep-

resented by others of the same class or by the life tenant. (*Irvin* v. *Clark*, 98 N. C., 437, and *Overman* v. *Tate*, 114 N. C , 571, cited and distinguished).

4. Contingent remaindermen, not represented either by guardian or attorney, and not named in the process, pleadings or decree, are not bound by proceedings for partition instituted by the other remaindermen and life tenant.

5. Where the rights of a contingent remainderman accrue at the death of the life tenant, the statute begins to run only from that event.

CIVIL ACTION by the plaintiffs to be let into possession as tenants in common with defendants of one-sixth undivided interest in land, heard before *Armfield, J.,* at December Term, 1893, of BUNCOMBE Superior Court. The land was devised by John B. Whitesides in the manner set out in the item quoted in the opinion of Chief Justice SHEPHERD. The plaintiffs are the children of Simpson Jarrett Whitesides, a son of the testator, who, supposing himself to own a vested interest in the land, conveyed the same to one Kimberly, who, joining with the life tenant and other sons of the testator, had the land sold in 1870 for partition, at which the defendant, or those under whom he claims, bought. Simpson Jarrett Whitesides was not a party to the proceedings, and died prior to the death of the life tenant, which latter event occurred in 1887.

The plaintiff contended that, under the will of John B. Whitesides, only such of the seven sons named in said will as should be living at the death of their mother Catherine M. Whitesides, could take under said will, or in case one or more should be dead at the time of her death, leaving lawful issue, then such issue were entitled to take the deceased father's intended share; and inasmuch as Simpson Jarrett Whitesides, one of the seven sons named in the said will, and the father of the plaintiffs, had died previous to the death of his mother, the said Catherine M. Whitesides, he, the said Simpson Jarrett Whitesides, took no estate under,

the will, and the share intended for him under said will went to the plaintiffs upon the death of the said Catherine M. Whitesides.

The defendants contended that the proper construction of said will conferred an absolute fee-simple estate on the said Simpson Jarrett Whitesides, to the extent of one-sixth interest, although he did not survive his mother, and that his conveyance of his share in said lands to John Kimberly in 1867, in connection with the subsequent proceedings in the Superior Court, the said John Kimberly, as purchaser, standing in his shoes, disposed of the entire one-sixth interest in said lands intended to be devised to him in said will, and left nothing that his sons, the plaintiffs, could take at the death of the said Catherine M. Whitesides; that in any view of the case the plaintiffs were bound by the warranty in their father's deed aforesaid, and could not recover their alleged share or interest in the face of said warranty.

The defendant further insisted that whatever might be the construction of the said will, or the effect of the said deed, and the proceedings aforesaid, his long, uninterrupted adverse possession of the said land, as stated in his answer, barred any recovery of any interest therein on the part of the plaintiffs.

It was agreed that the Court should pass upon the several questions thus presented. His Honor being of opinion with the plaintiffs, adjudged that they were the owners of and entitled to be let into the possession of an undivided sixth interest in the land, and defendants appealed.

*Mr. M. E. Carter,* for plaintiffs.
*Messrs. F. A. Sondley* and *W. R. Whitson,* for defendants (appellants).

SHEPHERD, C. J.: The numerous authorities cited in the elaborate brief of the defendants' counsel fail to convince us

that we are warranted in so far departing from the plain and natural import of the language used in the limitation before us, as to hold that the seven sons named in the will of their father took a vested remainder in the land therein devised. Fully appreciating, as we do, the public policy which induces the Courts to favor the early vesting of estates, we are nevertheless of the opinion that it would be doing violence to the most liberal rules of construction were we to say that it was the intention of the devisor that the estates limited to his said sons should vest before the death of his widow, the life tenant.   On the contrary, it was his evident purpose that the entire remainder in fee should be disposed of absolutely at a definite time, and that he did not intend that the remainder, as to any part of the property, should become vested while the remainder in the residue was dependent upon a contingency.

After a limitation to the wife for life, the will proceeds as follows: " At the death of my said wife, the said plantation, with all its rights and interests, I bequeath and devise to our seven sons, namely Henry Clay, James Hardy, Charles Lincoln, Frank Patton, Simpson Jarrett, William Ratliff and John Bowman, *or such of them as may be living at their mother's death*, and to their heirs share and share alike; and if any one or more of our said sons should be dead, leaving lawful issue, said issue shall take the deceased father's share in each and every such case."

The words we have italicized very clearly do not divest, by way of condition or otherwise, any estate previously limited, but are manifestly used as a part of the description of the persons who are to take; and these persons are plainly such only of the sons as may survive the life tenant.   In other words, the limitation, with a very slight transposition of the words, reads, " To such of my sons, Henry Clay, James Hardy, etc., as may be living at their mother's death, and to their heirs."   If the language indicating survivorship

were at all doubtful, the construction we have adopted would
be well sustained by the fact that the words of inheritance
do not immediately follow the names of the seven sons, but
they follow the qualifying language, "such of them as may
be living at their mother's death."

Under the construction we have put upon the will, there
can. be no question that the limitations. to the sons were con-
tingent remainders, the contingency being that they should
survive their mother, and failing in this, as to any one or
more of them, the remainder to vest in his or their issue, as
purchasers. This, as we have said in *Watson* v. *Smith*, 110
N. C., 6, is a limitation of several concurrent fees by way of
substitutes or alternatives, one for the other, "the latter to
take effect in case the prior one should *fail to vest in interest*,
and is known as a remainder on a contingency with a double
aspect." If one of the sons die before the mother, his
remainder is at an end, and can never vest, and another
remainder to the issue is substituted, who take nothing from
their father, but directly from the devisor.

That the limitation, under the construction we have
adopted, is a contingent remainder is apparent from the
decisions of this Court, and these decisions, it is believed, are
in harmony with the principles of the common law as enun-
ciated by the most approved authorities in other jurisdic-
tions. In *Starnes* v. *Hill*, 112 N. C., 1, and *Clark* v. *Cox*, at
this term, we quoted with approval the language of Mr.
Gray in his excellent work on Perpetuities, "that the true
test in limitations of this character is that if the conditional
element is incorporated into the description of the gift to the
remainderman (as it is in the case under consideration), then
the remainder is contingent, but if after the words giving a
vested interest a clause is added divesting it, the remainder
is vested. Thus, on a devise to A for life, remainder to his
children, but if any child die in the lifetime of A his share
to go to those who survive, the share of each child is said to

be vested, subject to be divested by its death. But on a devise (as in the present case) to A for life, remainder to such of his children as survive him, the remainder is contingent."

In *Watson* v. *Watson*, 3 Jones Eq., 400, the devise was to A for life, and at his death to such of his children as might then be living, and the issue of such as might have died leaving issue. It was held that A was tenant for life " with a contingent remainder in fee to his children who may be living at his death, and to the issue of such children as may have died in his lifetime, leaving children." See, also, *Watson* v. *Smith*, 110 N. C., 6.

In *Williams* v. *Hassell*, 74 N. C., 434, the Court said, " inasmuch as the lands are devised to the first takers for life only, with remainders to *such* of their children as should be living at their death, it cannot be ascertained *now* who are to take the remainder."

In *Young* v. *Young*, 97 N. C., 132, the Court said: " The *contingent* remainders limited on the termination of the life estate are to such of her children as are then living, and to the then living issue of such as have died leaving issue, so it is impossible to tell who will be entitled when the life tenant dies."

In *Miller, ex parte*, 90 N. C., 625, there was a devise of land to A for life, with remainder to such children as she may leave her surviving, and it was held that the children took contingent remainders.

Without resorting to the text-books, these authorities abundantly show that the element of survivorship in our case fully characterizes the limitation as a contingent remainder.

In view of the construction we have placed upon the language of the will, and of the decisions of our own Court, we do not deem it necessary to review the many English and other cases cited by counsel. None of them are directly in point, and, even if they were, we would be inclined to depart from our own decisions, which, as we have already remarked,

are, in our opinion, well supported by principle as well as authority. If the will should read as we have construed it (and of this we think there can be but little doubt), it is clear that these remainders are contingent. The case most strongly pressed upon us in the argument is *ex parte Dodd*, Phil. Eq., 97. The decision turned upon the construction placed upon the language of the will, under which it seems that the limitation was general, that is, to all of the children of the life tenant, or the issue of such children. The element of survivorship as a condition to the vesting of the remainder was considered as absent, and it was held that the remainder was vested as to the children living, subject, of course, to open and let in after-born children, or the issue of such as should die before the life tenant. That this is the *ratio decidendi* of the case, is apparent from the opinion of the Court in *Irvin v. Clark*, 98 N. C., 437. The limitation there was "to Margaret Irvin and her husband during their natural lives, and to descend to the children of the said Margaret equally." This was treated as a vested remainder, but the Court was careful to say that, "if the devise had been to those children *living at the death* of the mother, there would have been a contingent and not a vested interest in either, for until that event occurred it could not be known who would take, and in such case the contingent interest could not be sold by a Court of Equity. But when the gift is general, *not being confined to survivors*, when to take effect, it is otherwise, and, by representation, those who may afterwards come into being are concluded by the action of the Court upon those whose interests are vested, but whose possession is in the future. The distinction is pointed out by BATTLE, J., in delivering the opinion in *ex parte Dodd*."

As we have seen, the remainders to the sons being limited only to such of them as survived their mother, and Simpson Jarrett Whitesides, one of the said sons, having died in 1874, before the death of the life tenant in 1887, it must fol-

low that his children, the plaintiffs, acquired the interest in controversy as purchasers, and the only question which remains to be determined is, whether they are precluded from asserting their title by the conveyance of their father, and the proceedings for partition under which the land was sold and purchased by one Davis, under whom the defendant claims.

2. If the view we have taken of this limitation is correct, it is hardly necessary to cite authority in support of his Honor's ruling that the plaintiffs are not rebutted by the conveyance and warranty of their father in 1867. The case of *Flynn* v. *Williams*, 1 Ired., 509, is not in point. It was there held that where one having an *estate of inheritance in possession*, sells the same with general warranty, his heirs are bound, whether the warranty be lineal or collateral, and whether they have assets or not. In the present case, no estate whatever vested in the ancestor, and his children, who take as purchasers under the will, are, therefore, not bound by his warranty. Even had a life estate vested in him, his warranty would likewise have been ineffectual by way of rebutter. *The Code*, § 1334; *Starnes* v. *Hill, supra.*

3. Were the plaintiffs bound by the sale for partition? It appears that in 1870 John Kimberly (who had purchased the interest of Simpson Jarrett Whitesides), together with the life tenant (Catherine) and the other contingent remaindermen, united in a petition for the sale of the land for partition. Under a decree rendered in this proceeding the land was sold and T. K. Davis became the purchaser. The defendant claims under the said Davis, and denies the claim of the plaintiffs that they are tenants in common with him to the extent of one-sixth interest in the said land. The life tenant (Catherine) having died in 1887, the plaintiff's contention must be sustained, unless they are bound by the decree of sale. Neither these plaintiffs (if indeed they were in existence at that time) nor their father were parties to the

115—37

proceeding, but it is insisted that they were represented by others of the same class, or at least by the life tenant. It is plain that the other parties could not represent these plaintiffs as a part of the same class, and upon this point it is only necessary to refer to *Irvin* v. *Clark, supra,* and the authorities therein cited. Equally untenable is the position that these contingent remaindermen were represented by the life tenant. This would be a very radical departure from well-settled principles, and has received no countenance from this Court. In *Overman* v. *Tate,* 114 N. C., 571, we quoted, with approval, the language of Lord HARDWICKE in *Hopkins* v. *Hopkins,* 1 Atk., 590, that "if there were so many contingent limitations of a *trust,* it is an established rule that it is sufficient to bring the trustees before the Court, together with him in whom the first remainder of *inheritance is vested,* and all that may come after will be bound by the decree, though not *in esse,* unless there be fraud and collusion between the trustees and the first person in whom the remainder of inheritance is vested." In referring to the application of this principle in one or two jurisdictions where the first remainder was only for life, we stated that we were not prepared to adopt such a view, and *a fortiori* would it be rejected in a case like the present, where the limitations are not in trust but purely legal? Under the peculiar circumstances of the case referred to, we applied the principle declared by Lord HARDWICKE, the fact that the limitations were in trust not having been adverted to in a previous ruling. The decision was not based upon the idea that the child of Annie was of the same class as the issue of Caswell, but this was mentioned as a circumstance tending to show that but little prejudice would probably result by the application of the principle above stated, under the particular limitations then before us.

4. Neither is there any force in the contention that our case falls within the principle of *England* v. *Garner,* 90 N.

C., 197, and other decisions in which the Court has gone very far in sustaining judicial sales. It is not pretended that these plaintiff, even if *in esse*, were represented by guardian or any one claiming to be their attorney. Indeed, they are not mentioned as parties in any stage of the proceeding, nor is there anything in the decree which purports to bind their contingent interests.

5. As to the statute of limitations, it is only necessary to say that it did not begin to run against these plaintiffs until the death of the life tenant in 1887. Their rights accrued only upon that event, and it is therefore clear that they are not barred.

After a careful consideration of the elaborate brief of counsel, we have been unable to discover any error in the rulings of his Honor.                                          Affirmed.