FREEMAN v. FREEMAN.

(Filed April 10, 1906).

*Wills—Rules of Construction—Remainders.*

1.  The rule of construction that when the language used by a testator is doubtful, the court inclines to that construction which will make the title to property left in remainder vested, rather than contingent, is not permitted to interfere with the primary rule which requires the court, in all cases, to ascertain and effectuate the intention of the testator, as gathered from the language used, if possible.

2.  Where the language of a will is such as to call for construction, the court, with a view of securing a proper construction, puts itself, as far as may be, in the position of the testator, that it may see things from his point of view.

3.  The fact that a testator was illiterate, unable to write his name, and the fact that his will was not written by one learned in the law, do no take the case out of the rule that the court must ascertain the intention of the testator by reference to the language used in the will, unless it is so doubtful as to render it necessary to resort to extrinsic evidence.

4.  Where a will provided "That the real and personal property, at the death of my wife, shall be sold to the highest bidder, and the proceeds equally divided between all my children that appears personally and claims their part and this will shall disinherit all of said children who applies through an agent," only the children of the testator, who were living at the death of the widow, are entitled to share in the proceeds.

ACTION by N. C. Freeman, Executor, against Rachel Freeman and others, heard by *Judge T. J. Shaw*, at the October Term, 1905, of the Superior Court of DURHAM.

This is an action by the plaintiff, as executor of Ewell Freeman, asking for a construction of the will of his testator, who died in the county of Wake in 1880, leaving a last will and testament, the material parts of which are as follows:

"3. That my wife, Elizabeth G. Freeman, shall have the sole use of my real and personal estate as long as she may live. At her death Mary Frances, Nancy A. and Rufus W. Freeman shall have one bed, bedstead and clothing, one cow and calf each before the remainder of my children are entitled to anything. 4. That the real and personal property, at the death of my wife, Elizabeth Freeman, shall be sold to the highest bidder (graveyard excepted) and the proceeds equally divided between all my children that appears personally and claims their part, and this will shall disinherit all of said children that applies through an agent." At the time of the death of the said testator he left surviving eight children, three of whom have since died, leaving surviving a number of children. One daughter, Nancy, who intermarried with Sidney King, died leaving no children. His son, Spencer Freeman, resides in Georgia. One son, Rufus W. Freeman, left the State several years before his father's death, unmarried and under circumstances which displeased him—he has not been heard from since. Mary died without issue. That there are now surviving, of the children of said testator, plaintiff N. C. Freeman and defendants Spencer Freeman and Rachel.

His Honor being of the opinion that upon a proper construction of the will, only the children of the testator, who were living at the death of his widow, were entitled to share in the proceeds of the property, rendered judgmnt accordingly, from which the defendants, grandchildren and Sidney King, surviving husband of Nancy, appealed.

*Manning & Foushee* for the plaintiff.
*Winston & Bryant* for the defendants.

CONNOR, J., after stating the case: We fully concur with counsel for appellants that when the language used by a testator is doubtful, the court inclines to that construction

which will make the title to property left in remainder vested, rather than contingent. The authorities cited in the brief amply sustain the position. 2 Fearne Rem., 200; Gardner on Wills, 499. This rule is not permitted, however, to interfere with the primary rule of construction which requires the court, in all cases, to ascertain and effectuate the intention of the testator, as gathered from the language used, if possible. The court will ascertain such intention by giving to non-technical words their ordinary and popular meaning, assuming that the testator used them in that sense in which they are generally used and understood. It is sometimes said by way of illustrating this principle, "The intention must be found within the four corners of the instrument." To this general rule there is one exception. "Where the will is such as to call for construction, the court, with a view to securing a proper construction, puts itself, as far as may be, in the position of the testator, that it may see things from his point of view. To this end, evidence regarding all relevant facts and circumstances surrounding the testator at the time of executing the will is admissible." Gardner on Wills, 385. "The rule itself is always subservient to the intention of the testator; and, therefore, if upon construing the whole will, it *clearly* appears that the testator meant the time of payment to be the time when the legacy should vest, no interest will be transmissible to the executors or administrators, if the legatee dies before the period of payment. * * * For if the testator thinks proper to say distinctly that his legatees, general or residuary, shall not be entitled to the property unless they live to receive it, there is no law against such intention if clearly expressed." 2 Williams on Executors, 520-521.

In the light of these elementary principles we are of the opinion that the testator has clearly expressed his intention in regard to the disposition of his estate. We concur with the appellant that if he had concluded item four with the

words "all my children" they would have taken a vested remainder—but we may not discard, as without meaning, the words immediately following, "that appears personally and claims their part." The meaning and import of this language, in its ordinary acceptation, is too plain to admit of doubt. Those of his children are to take who shall "appear," that is, who are living at the time fixed for the sale and distribution. The language following is evidently used to make clear, if need be, his purpose to "disinherit all of said children that applies through an agent." We find no such uncertainty in the meaning of the language used as to permit us to go beyond "the four corners" of the will for aid. It is suggested that he was displeased with his son Rufus, who had left home many years before the execution of the will, under circumstances casting disgrace upon himself and family, and that it was his purpose, in using the language, to either disinherit, or require him, as a prodigal, to return home and claim in his own person his part. To adopt this view for the purpose of finding an intention not otherwise seen in the language used, would be exceedingly hazardous. In item three, he gives Rufus W., together with two of his daughters, certain personal property, attaching no condition to the gift. Attention is called to the fact that the testator is illiterate, unable to write his name, that the will was not written by one learned in the law, and that in such cases the court is moved to search out his real intention. These facts do not take the case out of the rule that we would ascertain the intention by reference to the language used, unless it is so doubtful as to render it necessary to resort to extrinsic evidence.

The conclusion at which we have arrived renders it unnecessary to discuss the claim of defendant Sidney King to the share which would have vested in his wife, if she had lived to "appear personally and claim her part." The cases in this court are reviewed, in the well considered opinion of

*Shepherd, C. J.,* in *Whitesides v. Cooper,* 115 N. C., 570. For the reasons and upon the principles, clearly set forth in that case, we are of the opinion that only those who come within the terms of the devise, at the death of the life tenant, are entitled to share in the proceeds of the land. It is probable the direction that the land, together with the personalty given the widow, be sold at her death and the proceeds divided, worked an equitable conversion from the death of the testator, in which event the interest of the deceased children leaving issue, if not contingent, passed to their personal representatives, and they should have been made parties. *Benbow v. Moore,* 114 N. C., 263. In view of the disposition which we have made of the appeal, the question is not material. The judgment must be

Affirmed.