# REYNOLDS v. COMMISSIONER OF INTERNAL REVENUE.
## No. 4641.

United States Circuit Court of Appeals,
Fourth Circuit.

Oct. 7, 1940.

the cost basis under the taxing statute of that year, the securities were acquired when he received them from the trustee, or when his father died and the will became effective. The Commissioner of Internal Revenue asserted that the acquisition took place upon the father's death and determined a deficiency of $33,878.61. From the approval of this determination by the Board of Tax Appeals, the taxpayer appealed.

The will directs that the residue of the estate shall be divided by the executor between the wife of the testator and his children living at his death and the living issue of any deceased child, per stirpes; i. e., one-third to the wife and two-thirds to the children and the issue of any deceased child, to be equally divided among them, share and share alike, but subject, as to the two-thirds of the residue left to the children, to the following trust: The children's shares are devised and bequeathed to the Safe Deposit and Trust Company of Baltimore as trustee, to collect therefrom for their equal benefit all the income until they severally arrive at the age of 21 years, meanwhile making necessary payments out of the income to the widow for the support and education of each of the children. The trustee is further directed to pay to each child between the ages of 21 and 28 certain monies out of his or her share of the income, and to accumulate the balance of the income for his or her benefit "until he or she shall respectively attain the age of 28 years when each of them shall become entitled to and shall respectively receive from said trustee his or her share of the corpus of my estate, together with the accumulated income aforesaid".

The will also provides that if any of the children should die before he arrives at the age of 28 years, then his share of the estate shall be further held in trust for the benefit of his devisees by will until he would have arrived at the age of 28 years if he had lived, when the trust shall cease and the estate shall become payable to his devisees; and if any of the children should die before arriving at the age of 28 years, without having made a will but leaving issue, then his share shall be held in trust for the benefit of his children until he would have reached the age of 28 years had he survived, when the trust shall cease and the estate shall become vested in his children; and if any of the testator's children should die without a will and without issue living at the termination of the trust, then his

J. Gilmer Korner, Jr., of Washington, D. C., and H. G. Hudson, of Winston-Salem, N. C. (Stratton Coyner, of Winston-Salem, N. C., on the brief), for petitioner.

Joseph M. Jones, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

On April 4, 1934, the taxpayer, Richard J. Reynolds, received certain securities from a trustee in accordance with the terms of the will of R. J. Reynolds, his father, who died on July 19, 1918. Later in 1934 the taxpayer sold some of the securities at a profit; and the question is whether, in ascertaining

share shall be held in like trusts for the surviving children.

In effect, two-thirds of the residue of the estate is devised and bequeathed to a trustee to divide it into as many shares as there were surviving children, the trustee to collect the income from each share and pay over a portion thereof to the child or for his benefit, and to accumulate the rest of the income until the child should reach the age of 28 years and then to pay over to the child the accumulation and the share of the corpus; but if he should die before the age of 28 years, then his share should be paid to his devisees, or if no will, to his surviving children, and if no will or children, then to the surviving children of the testator. Thus the corpus of two-thirds of the residue of the estate was devised in trust to an indefinite class of persons, but no member of the class was to take a part of the corpus unless he should reach the age of 28 years.

The trustee received the trust properties from the executor of the estate in 1926; and on April 4, 1934, when the taxpayer became 28 years of age, distributed to him his share, including the securities sold by him in the taxable year. Some of these securities had been received by the trustee from the decedent's estate and others had been acquired by the trustee in intermediate transactions under the terms of the will. The Commissioner, in computing the taxpayer's gain upon the sale of the securities, used as the basis the value of the securities at the time of the testator's death as to those then held by him, and the cost of the securities to the trustee as to those which it acquired thereafter. The position of the taxpayer before the Board of Tax Appeals and before this court is that since he did not become entitled to the property until April 4, 1934, he did not acquire any of it prior to that date within the meaning of the statute.

The Revenue Act of 1934, Ch. 277, 48 Stat. 680, 26 U.S.C.A. Int.Rev.Code, § 113, provides:

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

* * *

"(5) Property transmitted at death. If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *"

The decision of the Board is in harmony with Art. 113(a)(5) of Treasury Regulations 86, promulgated under the Revenue Act of 1934:

"Art. 113(a)(5)-1.—Basis of Property Acquired by Bequest, Devise, or Inheritance.—(a) Property included.—Section 113(a)(5) applies—

"(1) to all property passing from a decedent by his will or under the law governing the descent and distribution of property of decedents; and

"(2) to property passing under an instrument which, under section 113(a)(5) is treated as though it were a will, but applies to such property only at the times and to the extent prescribed in section 113(a)(5).

"(b) Basis.—Under the law governing wills and the descent and distribution of the property of decedents, all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent, even though the interest of him who takes the title was, at the date of death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise. Pursuant to this rule of law, section 113(a)(5) prescribes a single uniform basis rule applicable to all property passing from a decedent by will or under the law governing the descent and distribution of the property of decedents. Accordingly, the time of acquisition of such property is the death of the decedent, and its basis is the fair market value at the time of the decedent's death, regardless of the time when the taxpayer comes into possession and enjoyment of the property. * * *"

It will be perceived that under this regulation the time of acquisition of property passing from a decedent by will is the date of the decedent's death, whether the interest of the recipient is vested or contingent. The taxpayer concedes that the title to a vested interest relates back to the death of the decedent; but he contends that he was left only a contingent interest by his father's will, and that such an interest is not acquired within the true meaning of the statute until the contingency takes place. We must therefore first inquire whether the interest of the taxpayer under his father's will was vested or contingent, and the answer must be found in the law of North Carolina. Blair v. Commissioner, 300 U.S. 5, 9, 57 S.Ct. 330, 81

L.Ed. 465; Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L.Ed. 819; Lane v. Corwin, 2 Cir., 63 F.2d 767, 769; Pringle v. Commissioner, 9 Cir., 64 F.2d 863, 864; Becker v. Anchor R. & I. Co., 8 Cir., 71 F.2d 355, 357; Warner v. Commissioner, 2 Cir., 72 F.2d 225, 227; Roebling v. Commissioner, 3 Cir., 78 F.2d 444, 446; Forbes v. Commissioner, 1 Cir., 82 F.2d 204, 206; Twining v. Commissioner, 2 Cir., 83 F.2d 954, 955.

■ The rule in North Carolina in respect to what constitutes a vested as distinguished from a contingent remainder is in general the same as that of the common law. Hooker v. Bryan, 140 N.C. 402, 404, 53 S.E. 130. In many instances, as in the case at bar, the question arises with reference to an estate in remainder which is conditioned upon a time element. In such a situation the rule is that if the time specified is annexed to the payment only, the gift vests immediately; but where the time is annexed to the gift itself, as when it goes to the legatee when he arrives at a certain age, the bequest does not vest unless and until he arrives at that age. In applying the rule it should be borne in mind that the law favors the vesting of estates, and that a vested interest may be created by language clearly indicating an intent that a definite person shall receive the property, although the instrument subsequently provides that the gift shall not take effect unless a certain condition, such as the arrival of the beneficiary at a certain age, is fulfilled. Obviously the application of the rule is attended with difficulty and the distinctions drawn in the adjudicated cases, even in the same jurisdiction, are not always clear.

■■ In a number of North Carolina cases, a conditional element of time in testamentary dispositions has been held to create a contingent interest, as where a legacy is given to a person when he arrives at his majority. Kent v. Watson, 17 N.C. 366; Giles v. Franks, 17 N.C. 521; Gill v. Weaver, 21 N.C. 41; Anderson v. Felton, 36 N.C. 55; Whitesides v. Cooper, 115 N.C. 570, 20 S.E. 295; Freeman v. Freeman, 141 N.C. 97, 53 S.E. 620; McRae v. Commerce Union Trust Co., 199 N.C. 714, 155 S.E. 614; Knox v. Knox, 208 N.C. 141, 179 S. E. 610. In other instances, the intent to create a present vested interest was thought to be so clear that the time condition did not introduce a contingency, but at most, made provision for a subsequent divesting of the property in case the condition should not be met. Cooper v. Pridgeon, 17 N.C. 98; Hooker v. Bryan, 140 N.C. 402, 53 S.E. 130; Ziegler v. Love, 185 N.C. 40, 115 S.E. 887; Henderson v. Western Carolina Power Co., 200 N.C. 443, 157 S.E. 425, 80 A.L.R. 497; Hood v. McElvain, 215 N.C. 568, 2 S.E.2d 557. The criterion, of course, is the intent of the grantor or testator. As was said in Freeman v. Freeman, 141 N.C. 97, at page 99, 53 S.E. 620, at page 621: " 'The rule itself is always subservient to the intention of the testator; and, therefore, if upon construing the whole will, it clearly appears that the testator meant the time of payment to be the time when the legacy should vest, no interest will be transmissible to the executors or administrators, if the legatee dies before the period of payment. * * * For if the testator thinks proper to say distinctly that his legatees general or residuary, shall not be entitled to the property unless they live to receive it, there is no law against such intention if clearly expressed.' 2 Williams on Executors, 520, 521."

■ Applying these rules to the Reynolds case, it seems clear that it was the intention of the testator to divide two-thirds of the remainder of his estate into as many portions as there were children surviving at the time of his death, and to give to each child a part of the income from one share until he reached the age of 28 years, but to withhold the income accumulated in the meantime and the corpus of the share until he should reach the age of 28 years; so that unless he should attain that age, he would not be entitled to receive this property at all. This condition, it seems to us, was annexed to the gift itself in such a fashion as to create a contingent interest within the rule as illustrated by the North Carolina decisions. See, also, Roebling v. Commissioner, 3 Cir., 78 F.2d 444; Beers v. Commissioner, 3 Cir., 78 F.2d 447; Forbes v. Commissioner, 1 Cir., 82 F.2d 204.

The problem is simplified in the pending case by decisions in the North Carolina courts relating to the Reynolds will and discussing the nature of the interest held by the taxpayer and by his brother, Z. S. Reynolds, under the will during the period between the ages of 21 and 28 years. In Reynolds v. Safe Deposit & Trust Co., 201 N.C. 267, 159 S.E. 416, the court considered an application made by Richard J. Reynolds, the taxpayer herein, after reaching the age

of 21 years, to receive from the trustee of the estate double the amount made or saved by him in a year, under a provision of the will which directed the trustee to pay to any child between the ages of 21 and 28 two dollars for each dollar that he had made by individual effort in any legitimate business or investment, or had saved from money, stocks or bonds owned by him. Richard J. Reynolds, in computing his savings in the particular year, included in his income the sum of $50,000 allowed him annually under the will between the ages of 21 and 28 from the income on the trust estate set up for his benefit. He took the ground that he had a vested interest in and therefore owned the property from which the income was derived, subject only to a divestment by death before arriving at the age of 28 years; and hence so much of the $50,000 as he did not spend represented savings from money owned by him. The Supreme Court of North Carolina, without expressly characterizing the interest as vested or contingent, rejected the petitioner's contention and held that the income received from the trustee was not derived from monies or property owned by the taxpayer, and also held that the purpose of the testator to encourage habits of thrift on the part of his children would not be served by treating part of this income as money the taxpayer had made or saved through his own individual effort.

This decision was discussed by the Superior Court of Forsyth County and by the Supreme Court of North Carolina in Reynolds v. Reynolds, 208 N.C. 578, 182 S.E. 341, wherein was considered a petition to set aside a contract of settlement which made provision for Anne Cannon Reynolds II, a child of Z. S. Reynolds and his divorced wife, Anne C. Reynolds. Z. S. Reynolds died before he reached the age of 21. The case arose after his second marriage and death, and after the posthumous birth of Christopher Smith Reynolds, a son by the second marriage. The interested parties were joined in the proceeding and the court was called upon to consider among other things the validity of the divorce, the validity of a will of Z. S. Reynolds and the validity and fairness of the prior settlement for the benefit of the child of the first marriage. Ultimately the court approved a compromise settlement wherein it was agreed that out of the Z. S. Reynolds' share of the estate, divers payments should be made to his children, his second wife, and his brother and sisters.

During the pendency of the proceeding, the State of North Carolina was allowed to intervene and assert a claim for inheritance taxes on the share of Z. S. Reynolds in the estate. The State claimed that under the R. J. Reynolds' will, Z. S. Reynolds took a vested interest in a share of the estate and that the transfer of this interest upon his death gave rise to inheritance or succession taxes for which the State Commissioner of Revenue had levied an assessment. The court was petitioned to determine the exact amount of the taxes due and to decree that they be paid from the property in the hands of the trustee. The other parties to the cause, including the guardians of the infant children, the brother and sisters of Z. S. Reynolds and the trustee under the will of R. J. Reynolds, took issue with the claim of the State of North Carolina and averred that as Z. S. Reynolds died before he was 28 years of age, no part of the trust estate created by the will of his father, and no part of the accumulated income vested in him, and therefore no part thereof was transferred from him upon his death in such a way as to become subject to an inheritance or succession tax.

The brother and sisters of Z. S. Reynolds, however, proposed a settlement of all claims of the State of North Carolina for taxes in the sum of two million dollars, to be paid out of the share of Z. S. Reynolds; and this proposal of compromise was considered by the court in connection with the compromise settlement affecting the claims of the various parties interested in the estate. The court, having considered the will of R. J. Reynolds, held that thereunder Z. S. Reynolds did not acquire any vested interest in the trust estate or in the accumulated income, and that none of it would have vested in him unless and until he arrived at the age of 28 years. In reaching this conclusion, the court referred to the fact that in Reynolds v. Safe Deposit & Trust Co., 201 N.C. 267, 159 S.E. 416, the point was raised that the similar interest of Richard J. Reynolds under the will was a vested interest, but that the petition for increased allowance based on this assumption had been rejected. The court also referred to the uncertainty of the application of the State statute in the event of the non-exercise of a power of appointment. Finally the court approved the proposed compromise of the claims of the various parties interested in the estate of Z. S. Reynolds, including the claim of the State of North

Carolina for taxes, on the ground that the settlement proposed was for the best interests of the infants and of all of the parties, recognizing that the claims of the interested parties, including that of the State, presented difficult questions likely to result in long, expensive and uncertain litigation. An appeal was taken from the judgment of the Superior Court, but it was approved by the Supreme Court in Reynolds v. Reynolds, 208 N.C. 578, 182 S.E. 341. It thus appears that the precise point at issue in the pending case as to the quality of the interest of Z. S. Reynolds and of R. J. Reynolds, the taxpayer herein, was considered by the Superior Court of Forsyth County, and that it was definitely decided that the interest was contingent and not vested.

The inquiry in its final aspect is whether the date of acquisition by the legatee of a contingent remainder within the meaning of § 113(a)(5) of the Act of 1934 is the date of the testator's death or the date of the event upon which the remainder becomes vested. Strong light is thrown upon this question by the legislative history of the revenue acts, because § 113(a)(5) of the Act of 1934 is substantially the same as the corresponding sections of prior acts, i. e., § 202(a)(3) of the Act of 1921, 42 Stat. 229, § 204(a)(5) of the Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 7, and §. 204(a)(5) of the 1926 Act, 26 U.S.C.A. Int.Rev. Acts, page 151. It is important to ascertain how these prior statutes have been construed by the Treasury Department and by the courts.

In 1920 the Treasury Department, recognizing the distinction between vested and contingent remainders, held that if the interest of a remainderman in the property bequeathed by the will is contingent only prior to the death of the life tenant, the basis for determining gain or loss from the sale of the property by the remainderman is its value on the date of the death of the life tenant. O.D. 727, C.B. 53. Again in 1932 the General Counsel of the Bureau of Internal Revenue stated that the position of his office had been that one who has a mere contingent interest in property does not acquire the property until his interest becomes vested. G.C.M. 10260, C.B. XI-1, 79, 80.

The same conclusion was reached in the decisions of the courts which were called upon to interpret the earlier acts. In Pringle v. Commissioner, 9 Cir., 64 F.2d 863, certiorari denied 290 U.S. 656, 54 S.Ct. 72, 78 L.Ed. 568, wherein the Revenue Act of 1921 was interpreted and applied, the will of the testatrix created a trust for a period of 25 years from the birth of the youngest child living at her death, and provided that upon the termination of the trust the property should be distributed among such of the children as should be then living, the issue of a deceased child to take the parent's share, and if no issue, the whole to go to the survivors. Holding that the remainder was contingent under the State law, the court said (64 F.2d at page 864):

"It is not questioned that a person cannot be said to have 'acquired' property within the meaning of the Revenue Act, § 202(a)(3), supra, before he has some substantial ownership therein. If his interest is contingent upon the happening of some future event, until the happening of that contingency when his interest becomes vested, he has merely a possibility of acquiring an estate and cannot be said to have any substantial ownership therein. The rulings of the Department of Internal Revenue have consistently been to the effect that where one has merely a contingent interest in property he does not 'acquire' that property until his interest becomes vested. * * *

"Petitioners' interests in the property becoming vested on July 25, 1923, it was on that date that they 'acquired' the property within the meaning of section 202(a)(3) of the Revenue Act of 1921, supra, and the value of the property on that date should have been taken as the base for determining the gain or loss from the sale. * * *

"The cases of Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, and Chandler v. Field, 1 [Cir.] 63 F.2d 13, are not controlling here. In each of those cases the interest of the taxpayer became vested immediately upon the death of the testator."

In Lane v. Corwin, 2 Cir., 63 F.2d 767, certiorari denied 290 U.S. 644, 54 S.Ct. 62, 78 L.Ed. 558, under the Revenue Act of 1928, a somewhat similar testamentary provision was considered. The court said (63 F.2d at page 770):

"Since the interest of the appellants was merely contingent and not vested, they should not be considered as having acquired the property at the time of the death of the testatrix. The will gave the realty to the trustees in the manner described without any remainderman being stated as part of the trust provisions. A later clause in the will stated that upon termination of the trust 'each of my surviving sons shall

become seized absolutely of an undivided one-fourth interest in such real estate as may be then held in trust; the one-fourth interest of any of my sons who shall have died prior to or contemporaneously with the termination of such trust shall pass absolutely to his issue, if any, per stirpes. In default of such issue, such portion shall pass absolutely to his heirs as determined by the statutes of New York as to real property.'

"The complete enjoyment of the real estate could be obtained only after satisfying both the contingency of the termination of the trust and the contingency of the survival of the sons after the termination of the trust. This interest is not substantially a specific or general devise within the first sentence of section 113(a)(5). Therefore it falls within the third sentence of the statute, and the date of acquisition by the deed is the basis upon which to determine the cost to appellants".

See, also, Becker v. Anchor R. & I. Co., 8 Cir., 71 F.2d 355 and Forbes v. Commissioner, 1 Cir., 82 F.2d 204. The converse of the rule, where the remainder under consideration was vested, was applied in Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, where it was held that within the meaning of the Revenue Acts of 1918 and 1921, the time of acquisition by a residuary legatee of his interest in the estate of the testator was not the date of distribution, but the date of the testator's death; and the same rule was applied in Chandler v. Field, 1 Cir., 63 F.2d 13, certiorari denied 289 U.S. 758, 53 S.Ct. 791, 77 L.Ed. 1502; Huggett v. Burnet, 62 App.D.C. 67, 64 F.2d 705; Molter v. Commissioner, 7 Cir., 69 F.2d 7; Hopkins v. Commissioner, 7 Cir., 69 F.2d 11, 96 A.L.R. 1358; Warner v. Commissioner, 2 Cir., 72 F.2d 225, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; Roebling v. Commissioner, 3 Cir., 78 F.2d 444; Beers v. Commissioner, 3 Cir., 78 F.2d 447, certiorari denied 296 U.S. 620, 56 S.Ct. 142, 80 L.Ed. 440; Twining v. Commissioner, 2 Cir., 83 F.2d 954, certiorari denied 299 U.S. 578, 57 S.Ct. 42, 81 L.Ed. 426.

All of these cases arose under the Acts of 1921, 1924 or 1926, which were similar in this respect to the Act of 1934 now before the court, except Lane v. Corwin, Becker v. Anchor R. & I. Co., Forbes v. Commissioner and Twining v. Commissioner, which arose under the Act of 1928. That Act and the Act of 1932 were couched in language that differed from the prior and subsequent legislation. § 113(a)(5) of the Revenue Act of 1928 and of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts pages 380, 515, provided in part as follows: "Property transmitted at death. If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer." Although the language is changed, the word "acquired" is used in these intervening Acts and therefore decisions interpreting the word as used therein are relevant. In addition to the decisions of the Circuit Courts of Appeals above referred to, reference may also be made to Helvering v. San Joaquin Fruit & Investment Co., 297 U.S. 496, 56 S.Ct. 569, 80 L. Ed. 824, dealing with the Revenue Acts of 1921, 1924, 1926 and 1928, where it was held that real property was "acquired" within the meaning of these statutes under a lease containing an option to purchase not when the lease was made, but when the option was exercised, the court saying (297 U. S. at page 499, 56 S.Ct. at page 570, 80 L.Ed. 824): "If we should agree that a lessee-optionee acquires, by virtue of the instrument, an equitable interest in the land it would not follow that, within the contemplation of the revenue acts, he acquires the property at the date of the option rather than at the date of conveyance. The word 'acquired' is not a term of art in the law of property but one in common use. The plain import of the word is 'obtained as one's own'. Language used in tax statutes should be read in the ordinary and natural sense. In the common and usual meaning of the term the land was acquired when conveyed to the respondent's predecessor." If we apply the definition of the word "acquired", as given by the Supreme Court, it seems clear enough that the taxpayer did not acquire or obtain the property "as his own" until the contingency happened which made his ownership definite and certain. See, also, McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304. •

The re-enactment of the section in 1934 in substantially the same words as the earlier statutes is of great significance in view of the fact that a number of the cited decisions interpreting the term "acquired" had already been handed down when the statute was passed. It is a "familiar rule that where words are employed in an act which had at the time a well known meaning in the law, they are used in that sense unless the context requires the contrary". Case v. Los Angeles Lumber Co., 308 U.S. 106, 115, 60 S.Ct. 1, 7, 84 L.Ed. 110. And when a statute has been amended from time to time and language which has been construed by the courts is retained, it must be assumed that Congress is satisfied with and has adopted the construction given by the courts. Electric Storage Battery Company v. Shimadzu, 307 U.S. 5, 12, 59 S.Ct. 675, 83 L.Ed. 1071; see also Copper Queen Consol. Mining Co. v. Territorial Board of Equalization of Territory of Arizona, 206 U.S. 474, 27 S. Ct. 695, 51 L.Ed. 1143; Helvering, Commissioner v. Winmill, 305 U.S. 79, 59 S.Ct. 45, 83 L.Ed. 52.

It is of interest that as late as November 24, 1939, the Board of Tax Appeals in Van Vranken v. Commissioner, 40 B.T.A. 955, pointing out that the provisions of the Revenue Act of 1934 were similar to the Revenue Acts of 1921, 1924 and 1926, cited the decisions interpreting the earlier acts, and held that the date of acquisition of the interest of the remainderman depends upon whether the interest is vested or contingent. This position was reversed by the Board in Augustus v. Commissioner, 40 B.T.A. 1200, decided December 20, 1939, and Archbold v. Commissioner, 40 B.T.A. 1237, December 22, 1939. The Commissioner of Internal Revenue changed his position in 1935 upon the promulgation by the Treasury Department of Regulations 86, Art. 113(a)(5)(b), which, as we have seen, provides that "all titles to property acquired by bequest, devise, or inheritance relate back to the death of the decedent even though the interest of him who takes the title was, at the date of the death of the decedent, legal, equitable, vested, contingent, general, specific, residual, conditional, executory, or otherwise". Obviously this regulation amounts to an unwarranted amendment of the Act of 1934 if we are right in our assumption that this Act should be given the same interpretation as its

predecessors of similar import. It is of course immaterial that the regulation does not favor the government at the expense of the taxpayer, or that it makes for uniformity, simplicity and ease of administration. "We ought not to depart from the plain meaning of the section in an effort to bring about a uniformity which it is claimed Congress intended but failed to express". McFeely v. Commissioner, 296 U.S. 102, 111, 56 S.Ct. 54, 58, 80 L.Ed. 83, 101 A.L.R. 304.

The Commissioner, however, asserts that the circumstances under which the Act of 1934 was passed clearly indicate an intent on the part of Congress to provide a uniform basis for all interests passing under a will, whether vested or contingent. The burden of the argument is that when the Act was under consideration, the attention of Congress was called to the decision of Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, and that Congress understood it to hold that under the Acts of 1918 and 1921, the time of acquisition of all property passing by bequest, devise or inheritance, was the date of the testator's death. It is not denied that the decision was limited to a vested interest, but it is said that the statutory language must be given the meaning which, as Congress believed, had been attributed to it by our highest court.

An examination of the circumstances prior to and attendant upon the passage of the Act of 1934 does not support the Commissioner's contention. The reports of the Committees of the 70th Congress, 1st Session, (Ways & Means Committee of the House, Report No. 2, p. 18; Finance Committee of the Senate, Report No. 960, p. 26) show that the change in the 1928 Act was brought about by dissatisfaction with the decision in McKinney v. United States,* 62 Ct.Cl. 180, certiorari denied 273 U.S. 716, 47 S.Ct. 108, 71 L.Ed. 855, wherein it was held that the basis for determining gain or loss on a sale by an executor is the cost of the property to the decedent. The House preferred the rule that the basis in such a case should be the value at the time of the decedent's death, and proposed broadly that the value at that time be adopted as the basis for property acquired by bequest, devise or inheritance or by the deceased's estate from the decedent. Such a provision, if adopted and continued in the taxing stat-

* In 1935 the ruling of this case was disapproved in Hartley v. Commissioner, 295 U.S. 216, 55 S.Ct. 756, 79 L.Ed. 1399.

utes, would have accomplished the result for which the present regulation was designed; but the Senate refused to concur, pointing out that the proposal would not cover the sale of property purchased by an executor. The Senate proposed the language finally embodied in the Act of 1928 and repeated in the Act of 1932. The rule of McKinney v. United States was rejected, and a new section under the caption "Property transmitted at death" was enacted, wherein it was provided that in the case of property acquired by general or specific devise, or by intestacy, and in the case of property acquired by will or intestacy, the basis should be the value at the time of distribution to the taxpayer. When this new section came before the courts, it was held, as we have seen (Lane v. Corwin, Becker v. Anchor R. & I. Co., and Twining v. Commissioner), that a contingent interest of a beneficiary in property devised to a trustee is not a devise to the beneficiary within the meaning of the statute, and that upon the subsequent sale of the property by the beneficiary, the basis is the value at the time of distribution; and the distinction between vested and contingent remainders in applying the statute to specific cases was preserved.

These acts were in force in 1933 when Congress came to consider the Act of 1934. The Ways & Means Committee of the House (House Report 704, 73rd Congress, pp. 27-8) noted the lack of uniformity in the treatment of general as compared with special bequests of personal property in the Acts of 1928 and 1932, and said that since the 1928 Act was passed, the Supreme Court in Brewster v. Gage had defined the date of acquisition to mean the date of the death of the decedent in the case of all property passing by bequest, devise and inheritance, whether real or personal; and the committee therefore recommended that the language of the Act of 1932 be changed as to conform to the Act of 1926, "so that a uniform basis rule may be required in case of property passing at death whether real or personal".

■ This comment upon the decision in Brewster v. Gage was correct if it be taken to mean that therein no distinction was made between real and personal property; but it was not correct if it intended to say that the decision recognized no distinction based upon the nature of the estate created by the will of the deceased. The decisions of the courts (see Lane v. Corwin, Chandler v. Field, Pringle v. Commissioner, Huggett v. Burnet, Hopkins v. Commissioner, and Beers v. Commissioner) show that in Brewster v. Gage the court was concerned only with a vested interest. Moreover, it was made clear to the House Committee by representatives of the Treasury Department that the decision covered only one or two points, and that while the proposed amendment would eliminate some of the distinctions in the Act of 1928, it would not produce a uniform rule applicable to all situations. Our conclusion is that we are not warranted in departing from the general rule that where words are employed in one Act which had acquired a well known meaning in the law, they are to be given the same significance when used in a later statute. The history of the legislation under consideration does not reveal that Congress in reenacting in 1934 the language contained in the Acts of 1921, 1924 and 1926, intended that it should have a significance different from that attributed to it by the courts in construing the earlier acts.

It is suggested that a very definite trend to get away from the nice distinctions of the law of property in applying federal statutes of taxation is apparent in recent cases. For example, in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, the federal estate tax enacted by the Revenue Act of 1926 was held to cover not only interests which passed at death, according to the strict technicalities of the law of property, but also transfers inter vivos clearly akin to testamentary dispositions. Undoubtedly the distinction between vested and contingent remainders is of like technicality; and if we were free to treat the question of statutory interpretation in this case apart from its legislative history, considerations of uniformity and simplicity would be entitled to great weight. But the doctrine that reenactment of a statute impliedly adopts a settled judicial construction of the language employed was again recognized in the cited case, (309 U.S. at page 120, n. 7, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368), and although it was there thought to be irrelevant, its bearing here in the light of the legislative history of the statute is manifest. One practical consideration that may distinguish the situation in the pending case from that before the court in Helvering v. Hallock, is that an interpretation of the Act of 1934 in harmony with that given to the prior acts of like import is no more

likely to benefit the taxpayers than the government.

 We reach the conclusion that the correct basis for the calculation of the gain or loss of the taxpayer is the value of the securities when distributed to him by the trustee. Certain of these securities were owned by the decedent at the time of his death, and having passed under the will to the trustee, were retained by it until distribution to the taxpayer. Other securities distributed to the taxpayer when he reached the age of 28 years had been purchased by the trustee in the exercise of its power of administration of the trust. The Commissioner contends that the latter securities did not constitute property "acquired by bequest, devise, or inheritance" within the meaning of § 113(a)(5) of the Act of 1934, and that the basis thereof was the cost of the securities to the trustee. The Commissioner points to no provision of the statute, other than § 113(a)(5), as applicable to such a situation, but suggests that it is covered by Regulations 86, Article 113(a)(5)-1(a) which provides in part that if the property is an investment by the fiduciary under a will "the cost or other basis to the fiduciary is taken in lieu of the fair market value at the time when the decedent died". This regulation, however, seems to have no relevancy to the instant case since it is entitled "Property Acquired before March 1, 1913; Reinvestment by Fiduciary", and expressly refers to the case of a decedent who has died before March 1, 1913. We recur to the statute for there is no reason to believe that Congress in covering other contingencies, made no provision for the basis of securities purchased by a trustee under a will and subsequently passing to a beneficiary. In our opinion, § 113(a)(5) of the Act covers securities purchased by the trustee in the administration of the estate and distributed to the taxpayer, as well as securities received by the trustee from the decedent's estate and similarly distributed. Obviously the will of R. J. Reynolds was the source of the taxpayer's acquisition in both cases. We are in accord with the views expressed upon a similar question under the Revenue Act of 1928 in Commissioner v. Gambrill, 2 Cir., 112 F.2d 530, 533. Cf. Commissioner v. Maguire, 7 Cir., 111 F.2d 843. We conclude that the basis for determining gain to the taxpayer is the same as to both classes of securities: (1) Those owned by the testator at the time of his death, and (2) those purchased by the trustee. This basis is the fair market value of the securities at the time they were distributed by the trustee to the taxpayer, when the interest of the taxpayer therein that, up to that time, had been contingent, became absolute and vested.

The order of the Board of Tax Appeals is reversed, and the case is remanded for further proceedings.

Reversed and remanded.

