**VAN VRANKEN v. HELVERING, Commissioner of Internal Revenue.**

**No. 24.**

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1940.

Lee McCanliss, of New York City (Lee McCanliss, Archer P. Cram, and Robert B. Hankins, all of New York City, of counsel), for petitioner-appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Newton K. Fox, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal brings up a deficiency in income taxes assessed against the taxpayer for the year 1935, and depends upon what shall be taken as the "basis" in calculating her gain or loss upon the sale in that year of certain shares of stock, inherited from her father as part of a remainder, limited to her in a testamentary trust. He died on August 16, 1915, having devised and bequeathed the residue of his estate to his executors in trust for the life of his wife, the taxpayer's mother; they upon her death "to transfer, deliver and pay over to my daughter, Elsie Van Vranken" (the taxpayer) "if she shall outlive my wife, the remaining equal one-half part of the remainder of my estate. * * * If my daughter, Elsie Van Vranken, should die during her mother's lifetime, leaving lawful issue her surviving, then upon the death of my wife, I order and direct my said Executors and Trustees to transfer, deliver and pay over the remaining one-half part to the issue of my daughter, Elsie Van Vranken, in equal shares." The testator's wife outlived him and died on April 26, 1930; shortly thereafter the trustees delivered to the taxpayer the shares now in question, which, as we have said, she sold in 1935. The only question is whether the "basis" for computing her gain or loss is the value of the shares at the time of the testator's death or at the time of his wife's. In the first event there would be a gain; in the second, a loss. The Commissioner held that the date of the testator's death fixed the "basis," and so the Board found, basing its decision, however, upon the law of New York under which it held that the remainder was vested. We do not find it necessary to consider that question because we think that the testator's death is the proper date, even if the remainder was contingent.

Section 202(a) (3) of the Revenue Act of 1921, 42 Stat. 229, defined the "basis" for the sale of property "acquired" by will or descent as its value "at the time of * * * acquisition"; and the Acts of 1924 and 1926 (§ 204(a) (5) ) 26 U.S.C.A. Int.Rev. Acts, pages 8, 152, were the same. In 1928 this was changed; specific bequests and all real property, whether passing by devise or descent, were valued as of the death of the decedent, and so was all property passing from him to his "estate"; but all else was valued as of "the time of the distribution to the taxpayer." § 113(a) (5), 26 U.S.C.A. Int.Rev.Acts, p. 380. The Act of 1932 was in the same form, 26 U.S.

C.A. Int.Rev.Acts, page 515, but in 1934 Congress went back to the original, 26 U.S.C.A. Int.Rev.Acts, page 697, which it has repeated in the Acts of 1936 and 1938, 26 U.S.C.A. Int.Rev.Acts, pages 860, 1048. The phrase, "at the time of acquisition," seems to have been borrowed from the regulations promulgated under the Revenue Act of 1918 (Art. 56 of Regulations 45) where it first appeared. Very shortly thereafter the Commissioner construed this regulation as meaning the death of the testator, when the remainder was vested, and the occurrence of the limiting condition, when it was contingent. The first intimation to the contrary was in the regulations of 1934, which provided that the date of the decedent's death should be that of "acquisition" whether the remainder was vested or contingent (Article 113(a) (5), Regulations 86) and this all later regulations have repeated.

■ There had, meanwhile, grown up a large body of judicial construction of the acts before 1934 which uniformly accepted the administrative ruling and which we cite in the margin.[1] Under the well-recognized canon of statutory construction that the re-enactment of a statute incorporates · preceding judicial interpretations, a strong case can therefore be made against the regulation of 1934, which Judge Soper put most persuasively in Reynolds v. Commissioner, 4 Cir., 114 F.2d 804. Moreover, although an argument the other way might have been based upon the change in 1934 from "distribution" back to "acquisition," the Senate Committee Report shows that Congress was then concerned only to end the option which "distribution" had given to executors to choose the most profitable time for setting up testamentary trusts. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457, had decided that under the statute before 1928 a legatee "acquired" his bequest at the death of the testator, and Congress wished to make this the date for trustees in all cases. Were it not for

the change in the attitude of the Supreme Court towards the common-law distinction between contingent and vested remainders (Helvering v. Hallock, 309 U.S. 106, 60 S. Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368) we should therefore find it difficult to escape the force of the reasoning in Reynolds v. Commissioner, supra (114 F.2d 804).

■ It is true that the question before the Supreme Court was very different from that at bar; it did not even concern income taxes at all; it was whether a remainder limited upon a life estate could be said to have passed by a transfer "intended to take effect in possession or enjoyment" at the settlor's death, when that event, by determining that the remainderman was the survivor, ended the possibility that the settlor might take the property. But in deciding that question the court declared that the whole distinction of the common law between vested and contingent remainders was irrelevant; it was enough that the remainder, which had before been subject to defeat, became indefeasible by the settlor's death; that alone was a "transfer." The supposititious difference between an existing interest, subject to a condition, and an interest, non-existent before condition fulfilled, was said to preclude "a fair and workable tax system"; the "elusive and subtle casuistries" which it involved might "have historic justification," but were of no moment "for tax purposes" (309 U.S. page 118, 60 S.Ct. page 450, 84 L.Ed. 604, 125 A.L.R. 1368). In the case at bar we have substantially the same question though in a different form; we are to say whether a remainderman "acquires" any interest before it becomes certain that he will ever enjoy it. Whether one is forced to regard conditional existence as non-existence is after all a question in ontology which judges are ill fitted to answer. Practically a conditional interest "exists" in the sense that the holder can sell it and—if the condition is not his own survivorship—can bequeath it; and, as a new matter divorced

---

[1] Chandler v. Field, 1 Cir., 63 F.2d 13, certiorari denied, 289 U.S. 758, 53 S.Ct. 791, 77 L.Ed. 1502; Lane v. Corwin, 2 Cir., 63 F.2d 767, certiorari denied, 290 U.S. 644, 54 S.Ct. 62, 78 L.Ed. 558; Huggett v. Burnet, 62 App.D.C. 67, 64 F.2d 705; Pringle v. Commissioner, 9 Cir., 64 F.2d 863, certiorari denied, 290 U.S. 656, 54 S.Ct. 72, 78 L.Ed. 568; Molter v. Commissioner, 7 Cir., 69 F.2d 7; Hopkins v. Commissioner, 7 Cir., 69 F.2d 11, 96 A.L.R. 1358; Becker v. Anchor R. & I. Co., 8 Cir., 71 F.2d 355; Warner v. Commissioner, 2 Cir., 72 F.2d 225, certiorari denied, 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708; Roebling v. Commissioner, 3 Cir., 78 F.2d 444; Beers v. Commissioner, 3 Cir., 78 F.2d 447, certiorari denied, 296 U.S. 620, 56 S.Ct. 142, 80 L.Ed. 440; Forbes v. Commissioner, 1 Cir., 82 F.2d 204; Twining v. Commissioner, 2 Cir., 83 F.2d 954; certiorari denied, 299 U.S. 578, 57 S.Ct. 42, 81 L.Ed. 426.

from history, we should say that its "acquisition" dates from the time when he achieves that much control over it, like an unconditional interest whose enjoyment is merely postponed. But the problem is not that, for nobody disputes that under the rulings on which the taxpayer relies a "vested" remainder, "subject to be divested," is "acquired" when it "vests." We may start with that as datum and have only to say whether there is any difference for the purposes of taxation between such a remainder and one which the common law would have regarded as "contingent" ab initio; the choice is not between a conditional and an unconditional interest simpliciter, but between conditional remainders as they were differently classified by the phantom casuistry of the common law. That distinction we understand the Supreme Court to have repudiated as a determinant of tax liabilities.

It may indeed be reasonable à priori to say that our fiscal system was meant to fit upon the old mould as a whole; convenience in administration might make up for the lame correspondence between concept and polity. If Helvering v. Hallock, supra (309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368), had merely decided that the later cases were erroneously decided under the ancient rubrics, its decision would not be helpful here. But that was not the measure of the holding; it meant to jettison the distinction as an archaism no longer appropriate to existing needs; and it is as little appropriate to § 113(a) (5) as to § 302(c) of the Estate Tax. Moreover, quite aside from the asymmetry which its survival would create, it would be particularly unsuitable for salvage here. Any increase in value between the testator's death and the death of the life holder—or whatever other event may put an end to the condition upon the remainder—is certainly a "gain" if it is "realized." One may debate the propriety of taxing it to the remainderman rather than to the estate; but one cannot dispute that it is properly taxable to some one under the system as it stands. Nor is this conclusion shaken by the fact that the doctrine will permit the deductions of losses as well as the addition of gains, for prima facie all "realized" changes in value are factors in computing income.

The canon which the taxpayer invokes is sometimes a help, but we must never ignore the more important, though impalpable, factors. Indeed, nothing is so likely to lead us astray as an abject reliance upon canons of any sort; so much the whole history of verbal interpretation teaches, if it teaches anything. At times one is more likely to reach the truth by an unanalyzed and intuitive conclusion from the text as a whole, than by following, step by step, the accredited guides. Therefore, while without Helvering v. Hallock, supra (309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368), we should probably have felt obliged to hold that the statute incorporated the earlier rulings of the lower courts, it appears to us that, with that decision before us, we should not preserve what would now be no more than an egregious exception in the fiscal scheme as a whole.

Order affirmed.